**Keith Altman (*pro hac vice to be applied for*)**
**The Law Office of Keith Altman**
**33228 West 12 Mile Road, Suite 375**
**Farmington Hills, MI 48334**
**(516)456-5885**
**kaltman@lawampmmt.com**

*Attorney for Plaintiff*

### UNITED STATES DISTRICT COURT
### DISTRICT OF ALASKA

| | |
|---|---|
| **DANIEL MACDONALD,**<br><br>            **PLAINTIFF,**<br><br>**V.**<br><br>**THE UNIVERSITY OF ALASKA, SARA CHILDRESS IN HER INDIVIDUAL AND SUPERVISORY CAPACITY, CHASE PARKEY IN HIS INDIVIDUAL AND SUPERVISORY CAPACITY, SEAN MCCARTHY, JON TILLINGHAST, AND JOHN DOES 1-25** | **COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**<br><br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, BREACH OF CONTRACT, BREACH OF EXPRESS WARRANTY, AND NEGLIGENCE

NOW COMES Plaintiff, **DANIEL MACDONALD**, by and through his attorneys, The Law Office of Keith Altman, and for his Complaint against Defendants, hereby states the following:

## BACKGROUND

1.    This action is seeking declaratory and injunctive relief for Defendants' violations of Plaintiff's due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution.

2.    On November 8, 2019, Plaintiff Daniel MacDonald was accused of sexual harassment and non-consensual sexual contact.  Despite being promised a fair and impartial investigation of the claims to be completed within 50 days, Plaintiff received anything by what he was promised.  The investigation was conducted in an unprofessional manner by an investigator who so tainted the witnesses that it is highly unlikely that Plaintiff will ever get a fair adjudication of the merits.  The inadequacies of the investigation were so serious that the investigator was replaced.

3.    Furthermore, despite a deadline of 50 days for the investigation, the investigation has dragged on for several months without the establishment of good cause.

4.    In addition, in violation of Alaska's eavesdropping laws, the University of Alaska conducts video and audio surveillance of individuals who are unaware that audio recording is taking place.

5.     As a result of the violation of Plaintiff's due process rights as well as the associated conduct by Defendants, Plaintiff has suffered severe emotional distress as well as serious threats to his chosen career in academia.

6.     To protect the privacy of individuals involved in this lawsuit, Plaintiff will be using the pseudonyms Able, Baker, Cable, and Davis. Able is the complainant concerning the verbal jokes and comments. Baker is the complainant concerning inappropriate contact. Cable and Davis are additional witnesses who were interviewed during the investigation.

## PARTIES

7.     Plaintiff Daniel MacDonald ("MacDonald") is a citizen and domiciliary of the State of Washington. Plaintiff is a student at the University of Alaska and has been accused of sexual misconduct. Plaintiff vehemently denies any wrongdoing in this matter. Plaintiff was employed part-time as a residence assistant ("RA").

8.     Defendant The University of Alaska ("UA"), a public institution of higher learning, is a citizen and domiciliary of the State of Alaska. UA has its principal place of business in Alaska.

9.     The University of Alaska is established by the Constitution of the State of Alaska, Article VII, Section 2, which provides:

> The University of Alaska is hereby established as the state university and constituted a body corporate. It shall have title to all real and personal property now or hereafter set aside for or

conveyed to it. Its property shall be administered and disposed of according to law.

10.   The Board of Regents and its authority over the University of Alaska is established by the Constitution of the State of Alaska, Article VII, Section 3, which provides:

> The University of Alaska shall be governed by a board of regents. The regents shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session. The board shall, in accordance with law, formulate policy and appoint the president of the university. He shall be the executive officer of the board.

11.   Statutory Authority. Statutory provisions related to the authority of the Board of Regents over the University of Alaska are contained in AS 14.40.

12.   Thus, UA is an agency of the state and a state actor.

13.   Defendants John Doe 1-25 are citizens of the State of Alaska.

14.   Sara Childress is a citizen of the State of Alaska and is the Director of the USS Office of Equity and Compliance and the Title IX Coordinator for UA.

15.   Chase Parkey is a citizen of the State of Alaska and is the UA Southeast Acting Title IX Coordinator and was the investigator for the MacDonald Matter. Parkey was removed as the investigator for the MacDonald Matter.

16.   Sean McCarthy is a citizen of the State of Alaska and was the Coordinator for Residence Life and First-Year Experience.   McCarthy was Plaintiff's supervisor.

17.     Jon Tillinghast is a citizen of the State of Alaska and has been appointed as the new investigator for the MacDonald Matter.  Tillinghast is acting as an agent of UA.

18.     As used herein "Individual Defendants" shall mean and refer to Sara Childress, Chase Parkey, Jon Tillinghast, Sean McCarthy, and John Does (1-25).

19. Each of the individual defendants was acting in their individual and supervisory capacities.

## JURISDICTION AND VENUE

20.     This action seeks damages and injunctive relief under 42 U.S.C. §§ 1983 & 1985. As such, this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

21.     Furthermore, Plaintiff is a citizen of a different state from each Defendant and the amount in controversy exceeds $75,000.  As such, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1332(a)(1)

22.     This court also has jurisdiction under the provisions of 28 U.S.C. § 2201 as this action is filed to obtain declaratory relief regarding the constitutionality of the actions and policies of local government.

23.     This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

24.     Venue properly lies within this District under 28 U.S.C. § 1391(b). The named defendants perform their official duties in this District, and the events and omissions giving rise to plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

25.     The Board of Regents of UA has a policy concerning sexual and gender based discrimination.  This policy formed a part of the bargain in which a student agrees to attend UA in exchange for UA admitting the student.  This policy is denoted as Chapter 01.04 of Part I (Mission and General Provisions).

26.     In accepting admission to the UA Plaintiff relied upon the application of UA's policies.

27.     In accordance with policy R01.04.090, policies are set forth concerning the investigation of complaints of sexual harassment.  Subsection A sets forth the conduct of the investigation.

28.     Subsection C of R01.04.090 sets forth that the investigation **will** be completed and a final report issued within approximately 50 days.  The timeline may be extended for good cause for which the parties must be notified.

29.     On November 8, 2019, Plaintiff received a letter from Defendant Childress that he was under investigation for sexual harassment and non-consensual sexual contact.  In the letter, Plaintiff was advised that Defendant Parkey would be conducting the investigation.  Furthermore, Plaintiff was promised a "prompt and

impartial" investigation. Reference to UA's sexual harassment policy, P01.04, was made within the letter implying that the investigation would be conducted in accordance with that policy.

30. Plaintiff was informed of the investigation on November 8, 2019. Accordingly, the investigation was to be completed by December 28, 2019, under R01.04.090(c).

31. Plaintiff was entitled to reasonably rely upon the investigation to be concluded by December 28, 2019, and that he would be informed promptly if the investigation was going to be extended for good cause.

32. Not only was the investigation not completed by December 28, 2019, but the investigator appointed by UA was also removed.

**Defendant Chas Parkey's Investigation Violated Plaintiff's Due Process Rights Guaranteed by The Fifth and Fourteenth Amendments to The U.S. Constitution**

33. Defendant Chase Parkey conducted the investigation in an unprofessional manner and in a way which violated Plaintiff's constitutional right to due process.

34. Parkey's language in the transcribed interviews is unprofessional and crude, and borders on Title IX violations itself. One example of this behavior is in the 11/13/2019 interview with Baker, wherein he stated:

Are you aware of anything about [Daniel] talking to Baker saying other girls have nice asses? What was the term he used? Or commenting on a girl's ass? (p. 2/31 of Baker's Interview on 11/13/2019).

35.    There was no reasonable explanation for speaking to an alleged victim or witness in such crude terms. It is also clear from the context that he was not specifically quoting Daniel here.

36.    Additionally, Parkey related details to witnesses incorrectly, such as when talking to Baker, he described Daniel as having said that he was on top of Baker when Daniel had actually described the incident to Parkey as Baker being on top.

37.    Furthermore, in Baker's 11/6/2019 interview, Parkey appears to urge Baker to file a complaint, tells her that there are other complaints against Daniel, and other inappropriate comments, such as:

I mean, I can't be biased because then I can't investigate it. But you're not the only one. And again, I could only say that because you know it.

You're not the only one. And I think if you were to talk to Able and not obviously pressure her, but ask her if she would consider doing the investigation as well. I can do both at the same time. (p. 12/17 of Baker's Interview on 11/6/2019).

38.    Parkey also told Baker that it was okay to talk to other students about the investigation, which is particularly disturbing given the context of Baker wondering if that would be "retaliation":

Baker: And with me, like telling my friends about what happened. Would that be considered retaliation against him?

Parkey: It depends on how you tell them. If you go walking around campus with a sign, maybe. If you just talk to someone like you do with Ke** or Able, no. (p. 13/17 of Baker's Interview on 11/6/2019).

39. Another disturbing comment from Parkey is when he told Baker that he, "cannot tell Able that I talked to [Baker]." (p. 16/17 of Baker's Interview on 11/6/2019). This is particularly interesting given that it shows that Parkey knew he should not be talking about other witnesses' statements and claims, even though he does exactly that many times in the interviews with witnesses, including telling Baker all kinds of confidential information about the investigation. Shortly after this segment of the conversation, Parkey begins telling her how to accumulate more witnesses to back up her statements, how to help move the investigation forward, etc. Id.

40. This became even more of an issue concerning Cable's comments about the retaliation and backlash that Daniel has been facing since the investigation began, such as how "everybody now sees him as like a sexual predator because that's what's going around." (p.22/26 of Cable's 12/13/2019 Interview).

41. At Parkey's prompting, Baker told Professor Erica Hill that Plaintiff was a sexual predator and convinced her not to write a letter of recommendation for him.

42.     In further violation of Plaintiff's due process rights, Parkey used improper interview and interrogation techniques.

43.     During Baker's 11/6/2019 interview, Parkey bragged of having been a law enforcement officer, and the techniques employed showed. Law enforcement officers are often trained in Reid-style interview and interrogation techniques, which are used primarily to extract confessions. However, these techniques can often badger and manipulate a witness when used improperly.

44.     An example of this occurs in Cable's 12/13/2019 interview, where Parkey appears to be trying to persuade Cable to speculate about Daniel when she kept answering that she does not know. (pp. 15-17/26 of Cable's 12/13/2019 Interview).

45.     This is also evident in Davis' 11/14/2019 interview, where Parkey presented leading questions to coax Davis into agreeing with his preconceived notions of the facts, rather than actually allowing Davis to explain events in his own words. (pp. 8-9 of Davis' 11/14/2019 Interview).

46.     Parkey's conduct also violated Plaintiff's rights under the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA").

47.     There are multiple examples throughout the transcripts of interviews where Parkey disclosed confidential information about the pending investigation. One particularly egregious example occurs in Able's 11/14/2019 interview, wherein

he first states that "[Daniel's] termination from an RA had nothing to do with Title 9 whatsoever. I'm not sure where that came from." However, he goes further and states specifically that, "[Daniel] has admitted to saying inappropriate things to [Able]. He has owned up to that fact." (p. 15/16 of Able's Interview of 11/14/2019).

48.     While Parkey may have been disclosing this information to Able in some form to ingratiate him to her such that she gives up more information during the interview, it is highly inappropriate.

49.     On January 27, 2020, counsel representing Plaintiff in the investigation wrote a letter to Defendant Parkey and UA authorities relaying the circumstances of the investigation.   As a result of the letter, Parkey was removed from the investigation.

50.     Defendant Parkey's inappropriate conduct during the investigation virtually assured that Plaintiff would not be given a fair and equitable treatment of the allegations lodged against him.  Furthermore, Parkey tainted the witnesses by providing information to the which further prevents Plaintiff from receiving fair treatment in the investigation of the allegations.

51.     This becomes even more troubling when the standard for finding a violation of the rules is "preponderance of the evidence" standard and not "beyond a reasonable doubt" as would be required in criminal prosecution.  Furthermore, state and federal rules of evidence do not apply during these proceedings.

52.    Plaintiff is not alleging that the standard of proof or evidence rules violate his due process rights; only that given the tainting of the evidence during the improper investigation will have a magnified effect.

53.    Defendant Parkey's conduct concerning the investigation violated Plaintiff's rights to due process guaranteed under the Fifth Amendment of the U.S. Constitution.

## The Investigation Was Not Completed Timely as Outlined in The Polices and Was Not Extended for Good Cause, Nor Did Good Cause Exist

54.    At no time before December 28, 2019, did UA inform Plaintiff that the investigation was being extended for good cause.

55.    At no time did good cause exist for extending the investigative timeline:

    a.    Complex circumstances did not exist in this matter. Essentially, the incident was a he said/ she said situation.

    b.    There were no difficulties with the availability of evidence or individuals.   Several individuals were interviewed by Defendant Parkey.

    c.    Law enforcement was not involved with the incident.

    d.    School breaks were not a factor in the investigation.

    e.    There were no legitimate bases for an extension.

    f.    Neither the complainant nor the respondent requested an extension of time.

56.     In fact, the investigator Defendant Chase Parkey performed the investigation in a poor manner leading to his removal as the investigator. Parkey was a supervisory employee of UA and investigations allegations such as this matter was within the scope of his employment.

57.     Plaintiff was entitled to due process under the Fifth and Fourteenth Amendments to the U.S. to have the allegations investigated following the policies set forth by UA.

58.     UA has not investigated the manner as outlined in its policies. Because the time for the investigation was not completed within 50 days as outlined in the UA policies and there is no good cause for an extension, continuing to investigate this matter violates Plaintiff's due process rights.

### Surveillance Footage Used by The University Constitutes Illegal Eavesdropping and May Not Be Used for Any Purpose

59.     While investigating the allegations concerning Plaintiff, UA used and relied upon surveillance footage. This footage included video ***and*** audio.

60.     At the time the video was captured, none of the individuals speaking were aware that audio of their conversations was being recorded.

61.     In Alaska, Eavesdropping is defined as follows:

AS 42.20.310. Eavesdropping.
**(a)** A person may not

**(1)** use an eavesdropping device to hear or record all or any part of an oral conversation without the consent of a party to the conversation;

**(2)** use or divulge any information which the person knows or reasonably should know was obtained through the illegal use of an eavesdropping device for personal benefit or another's benefit;

**(3)** publish the existence, contents, substance, purport, effect, or meaning of any conversation the person has heard through the illegal use of an eavesdropping device;

**(4)** divulge, or publish the existence, contents, substance, purport, effect, or meaning of any conversation the person has become acquainted with after the person knows or reasonably should know that the conversation and the information contained in the conversation was obtained through the illegal use of an eavesdropping device.

**(b)** In this section "eavesdropping device" means any device capable of being used to hear or record oral conversation whether the conversation is conducted in person, by telephone, or by any other means; provided that this definition does not include devices used for the restoration of the deaf or hard-of-hearing to normal or partial hearing.

62.     Plaintiff engaged in conversations which neither he nor to the best of his knowledge any other participant in the conversations were being audio recorded.

63.     Audio recording of such conversations is illegal under AS 42.20.310.

64.     Defendant Sean McCarthy disclosed the contents of surveillance footage to Baker.  This disclosure was a violation of AS 42.20.310.

65.     It is clear from the above definition of Eavesdropping that the surveillance footage used in this matter constituted illegal eavesdropping.  As such, the footage should not have been used for any purpose.

66.     Using the surveillance footage discussed above is a criminal act.   It tainted the investigation in a way that further violated Plaintiff's due process rights.

67.     In all, the conduct of the investigation not only violated Plaintiff's due process rights but constitutes a breach of contract and a violation of the Alaska Administrative Procedures Act.

68.     Should Plaintiff be found to have committed the acts alleged in the sexual harassment and non-consensual sexual contact complaint, he is subject to discipline within the UA including expulsion and denial of his undergraduate degree. Furthermore, an adverse finding will have a devastating effect on his prospects for continuing his education at the graduate level leading to employment in academia.

69.     As a result of the violations of Plaintiff's due process rights as well as other conduct by Defendants, Plaintiff has suffered severe emotional distress and his academic career has been damaged.   Plaintiff seeks declaratory and injunctive relief as well, compensatory damages, punitive damages, and recovery of fees and costs.


## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against All Defendants)

70.     Plaintiff incorporates by reference each previous paragraph of this Complaint as if fully copied and set forth at length herein.

71.    Under the Fifth Amendment to the United States Constitution, "no person shall be deprived of life, liberty, or property without due process of law." This provision of the Fifth Amendment applies to States under the Fourteenth Amendment of the Constitution.

72.    Plaintiff has been denied his due process rights by Defendants rights in violation of the Fifth and Fourteenth Amendments in that:

a.  The investigation into the allegations against Plaintiff was conducted improperly and so tainted the witnesses and evidence that it is highly unlikely that Plaintiff could receive a fair adjudication of the matter.

b.  The investigation was not timely completed as outlined in the administrative policies of UA and good cause has not been demonstrated for an extension.

c.  Various Defendants made criminal use of illegal eavesdropping while investigating the matter.

d.  UA intends to continue the investigation after the tainting of the witnesses, the untimeliness of the investigations, and the criminal use of illegal eavesdropping.

73.    An actual and justiciable controversy exists between Plaintiff and Defendants as to whether Plaintiff's due process rights have been violated and will

continue to be violated should the investigation be allowed to continue and whether or not Defendants' actions and inactions described are lawful.

74. This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 *et seq.*, seeking a determination by the Court that: (a) Plaintiff's due process rights have been violated under the Fifth and Fourteenth Amendments to the U.S. Constitution; (b) that continuation of the investigation will violate Plaintiff's rights under the Fifth and Fourteenth Amendments to the U.S. Constitution; (c) that Defendants shall be enjoined from the criminal use of the proceeds of the illegal eavesdropping of Plaintiff; (d) that Defendants be enjoined from continuing the investigation of Plaintiff concerning the allegations outlined in the November 8, 2019 notification to Plaintiff; (e)that Defendant UA is enjoined from employing surveillance that records audio without the consent of participants; (f) an award of reasonable attorneys' fees and costs of suit to Plaintiff as appropriate; and (g) such other and further relief as is necessary and just may be appropriate as well.

75. Plaintiff is an interested party because he was subject to actions and inactions described and, accordingly, seeks a declaration of his rights concerning the legality of those actions and inactions to which he was subject.

76. As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered injuries entitling him to receive declaratory and injunctive relief against Defendants.

## SECOND CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983
## FIFTH AND FOURTEENTH AMENDMENTS- DUE PROCESS
### (As to the Individual Defendants)

77.     Plaintiff incorporates by reference each previous paragraph of this Complaint as if fully copied and set forth at length herein.

78.     When the events contained in this Complaint occurred, the Individual Defendants were acting within the scope of their employment or contract and under the color of law.

79.     The Fifth and Fourteenth Amendments of the U.S. Constitution provides, in pertinent part, that "no person shall be deprived of life, liberty, or property without due process of law."

80.     As such, Plaintiff was entitled to a fair and impartial investigation of the allegations lodged against him in accordance with the policies established concerning sexual harassment.

81.     Each of the Individual Defendants was aware that Plaintiff was entitled to a fair and impartial determination of the merits of the charges against Plaintiff.

82.     Each of the Individual Defendants was aware of the policies concerning sexual harassment at UA.

83.     Plaintiff has been denied his due process rights by Defendants rights in violation of the Fifth and Fourteenth Amendments in that:

a. The investigation into the allegations against Plaintiff was conducted improperly and so tainted the witnesses and evidence that it is highly unlikely that Plaintiff could receive a fair adjudication of the matter.

b. The investigation was not timely completed as outlined in the administrative policies of UA and good cause has not been demonstrated for an extension.

c. Various Defendants made criminal use of illegal eavesdropping while investigating the matter.

d. UA intends to continue the investigation after the tainting of the witnesses, the untimeliness of the investigations, and the criminal use of illegal eavesdropping.

84.     Each of the Individual Defendants decided collectively to take actions which violated the due process rights of Plaintiff.

85.     Defendant Sean McCarthy criminally reviewed, disclosed, and used material obtained by video and audio surveillance in violation of Alaska's eavesdropping laws.  Defendant Parkey knew or should have known that such eavesdropping was illegal.

86.     Defendant Parkey conducted his investigation in an unprofessional manner which has tainted the entire process to the point that Plaintiff is highly unlikely to receive a fair and impartial adjudication to the matter.

87.    Defendant Childress is continuing the investigation despite the knowledge that the investigation by Parkey is tainted and that the investigation is not being conducted in accordance with UA's sexual harassment policies.

88.    Defendant Tillinghast is acting as the investigator of this matter knowing that the investigation is tainted and is not being conducted in accordance with UA's sexual harassment policies.

89.    The Individual Defendants have acted and are acting with full knowledge that Plaintiff's due process rights have been violated and continue to be violated.

90.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered physical and emotional injury, humiliation, and other constitutionally protected rights and damages as described herein.

91.    The actions of the Defendants violated the provisions of 42 U.S.C. §1983 in that they knowingly and willfully violated the civil rights of Plaintiff.

## THIRD CAUSE OF ACTION
### Training, Supervision, or Discipline
### Fifth and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983
### (Against Sara Childress)

92.    Plaintiff incorporates by reference each previous paragraph of this Complaint as if fully copied and set forth at length herein.

93.    Defendants acting under the color of law, maintain hiring, training, supervision, and/or discipline that permit or are in reckless disregard or deliberately indifferent to the violations of Plaintiffs' Fifth and Fourteenth Amendment rights secured by the U.S. Constitution. Such hiring, training, supervision, and/or discipline was the moving force behind the violation of Plaintiff's Fifth and Fourteenth Amendment Rights.

94.    Specifically, Defendant Parkey was inadequately trained to conduct investigations of sexual harassment and non-consensual sexual contact claims.  He conducted his investigation in an unprofessional manner which reflects upon his training or more to the point, lack of training.

95.    Sean McCarthy was not trained on the proper use of surveillance.  His use of surveillance audio was a criminal act under the Alaska eavesdropping law.

96.    Defendant Childress was aware of the due process rights of Plaintiff and that Parkey had conducted an inappropriate investigation in violation of those rights.

97.    Although Parkey was removed as the investigator in this matter, no disciplinary action was taken against Parkey.

98.    The inadequacy of the hiring, training, supervision, and/or discipline and the need for adequate hiring, training, supervision, or discipline, is patently obvious and foreseeably likely to result in the violation of persons' Fifth and

Fourteenth Amendment rights secured by the U.S. Constitution. Specifically, the inadequacy of the hiring, training, supervision, and/or discipline lead to the violation of Plaintiff's due process rights.

99. Childress' actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to Plaintiff's Fifth and Fourteenth Amendments rights secured by the U.S. Constitution, or were wantonly or oppressively done.

100. As a direct and proximate result of Childress' actions and inactions, Plaintiff suffered injuries entitling him to receive compensatory damages and declaratory and injunctive relief against Defendant Childress.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**Monell – Policy of Due Process Violations of the Fifth and Fourteenth**
**Amendments to the U.S. Constitution by UA**
**(Against Defendant UA)**

101. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully copied and set forth at length herein.

102. A corporation, municipal or otherwise, is liable under 42 U.S.C. § 1983 if the acts that violated a person's rights are attributable to its own policies, practices, and customs.

103. At all times relevant to this complaint, Defendant UA's policymakers and decision-makers maintained policies and practices that condoned and fostered

the unlawful conduct of their unnamed employees, thereby demonstrating deliberate indifference to the constitutional rights of those accused with violations of the sexual harassment policies of UA.

104.    Defendant UA, through its employees, officers, and agents has customs and practices to investigate claims of sexual harassment and non-consensual sexual contact in a manner that denies accused individuals with their due process rights guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution.

105.    These customs include, but are not limited to:

    a.  Using individuals with inadequate training to conduct investigations.

    b.  Allowing individuals to conduct investigations using unprofessional and improper methods.

    c.  Allow investigations to be conducted in a manner that does not comply with the sexual harassment policies of UA.

    d.  Failing to discipline individuals who perform investigations in an improper and unprofessional manner.

106.    At all times relevant to this complaint, Defendants Childress and Parkey were the policymaker(s) and/or decision-maker(s) for Defendant UA, and enacted policies, procedure, customs, and/or protocols which violated the due process rights of individuals, including Plaintiff, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.

107. As a result of Defendant UA's policies, customs, and practices, Plaintiff's right to due process under the Fifth and Fourteenth Amendments to the U.S. Constitution were predictably violated as outlined herein.

108. In the alternative, at all pertinent times, Defendant UA failed to properly train those charged with investigating claims of sexual harassment and non-consensual sexual contact, thereby demonstrating deliberate indifference to Plaintiff's rights. This failure to train included the failure to train its employees and/or contractors. Defendants, by denying Plaintiff his due process rights, showed such a lack of training.

109. UA's training program, or lack thereof, was inadequate to the tasks that its employees/contractors were required to perform; the inadequacy was the result of UA's deliberate indifference to Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution; and the inadequacy is closely related to or caused Plaintiff's injuries.

110. As a result of Defendant UA's complained of failures to properly train its employees on the standard of treatment of serious medical needs, Plaintiff suffered predictable harm.

## FIFTH CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C § 1983- CONSPIRACY
### (Against All Defendants)

111.   Plaintiff incorporates by reference each previous paragraph of this Complaint as if fully copied and set forth at length herein.

112.   The individually named Defendants, acting in concert with each other, conspired to deny Plaintiff of his civil rights, specifically, their right due process in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution in the following non-exclusive ways:

a.   The investigation into the allegations against Plaintiff was conducted improperly and so tainted the witnesses and evidence that it is highly unlikely that Plaintiff could receive a fair adjudication of the matter.

b.   The investigation was not timely completed as outlined in the administrative policies of UA and good cause has not been demonstrated for an extension.

c.   Various Defendants made criminal use of illegal eavesdropping while investigating the matter.

d.   UA intends to continue the investigation after the tainting of the witnesses, the untimeliness of the investigations, and the criminal use of illegal eavesdropping.

113.   As a result of the concerted unlawful and malicious conspiracy of all of the Defendants, Plaintiff was denied his right to due process and the course of justice was impeded.

114.   As a direct and proximate result of the unlawful and malicious conspiracy of the Defendants, Plaintiff has suffered damages not only compensatory but punitive damages are appropriate to be awarded, all under 42 U.S.C. § 1983.

## SIXTH CAUSE OF ACTION
### VIOLATION OF ALASKA'S ADMINISTRATIVE PROCEDURES ACT, AS 44.62, *et seq.*
### (Against All Defendants, except Sean McCarthy)

115.   Plaintiffs incorporates by reference each previous paragraph of this Complaint as if fully copied and set forth at length herein.

116.   UA is an agency of the State of Alaska and is governed by a board of Regents.

117.   As an agency of the state, UA is required to comply with Alaska's Administrative Procedures Act, AS 44.62, *et seq.*

118.   The Regents of the University of Alaska has adopted policies governing the operation of UA[1].  Part of these policies is the policy on sexual and gender based discrimination, P01.04.  *Id.*

119.   Specifically, P01.04.090 sets forth policies for investigating complaints of sexual harassment.

120.   In particular, P01.04.090(C)(1) sets forth the investigative timeline that investigations **will** be concluded in approximately 50 days.  With good cause, the timeline can be extended.  P01.04.090(C)(2).  If the investigation is extended for

---

[1] See https://www.alaska.edu/bor/policy-regulations/

good cause, the parties will be informed of the delay and the anticipated duration. P01.04.090(C)(3).

121. Plaintiff was informed of the investigation on November 8, 2019. According to the policies, the investigation had to be concluded by approximately December 28, 2019, unless extended for good cause.

122. On January 27, 2020, Plaintiff and his advocate wrote to Defendant Parkey and supervisors concerning the unprofessional conduct of the investigation. At that time, the investigation had not been completed nor had Plaintiff been informed that the investigation would be extended for good cause.

123. On March 2, 2020, Defendant Childress emailed Plaintiff informing him that the investigation was being reassigned and that Defendant Parkey was no longer investigating the matter. The email did not explain the basis for continuing the investigation and certainly did not identify good cause for extending the investigation.

124. At no time before March 2, 2020, was Plaintiff informed that the investigation would be extended for good cause.

125. On March 3, 2020 Plaintiff's advocate informed Defendant Childress that there was no basis for extending the investigation.

126. At no time did good cause exist for extending the investigative timeline:

a. Complex circumstances did not exist in this matter. Essentially, the incident was a he said/ she said situation.

b. There were no difficulties with the availability of evidence or individuals. Several individuals were interviewed by Defendant Parkey.

c. Law enforcement was not involved with the incident.

d. School breaks were not a factor in the investigation.

e. There were no other legitimate bases for an extension.

f. Neither the complainant nor the respondent requested an extension of time.

127. Despite knowledge of the unprofessional and tainted investigation as well as the failure to adhere to the required timelines, Defendants are intending to continue the investigation in violation of the policies set forth under P01.04.

128. Such conduct is violative of the Alaska Administrative Procedures Act which requires state agencies to comply with their regulations.

129. Plaintiff is a party to the administrative proceeding.

130. At all times Plaintiff has satisfied the procedural requirements of the administrative proceeding concerning the allegations of sexual harassment.

131.  UA has unreasonably delayed the investigation by extending the investigation beyond the 50-day timeframe as outlined in P01.04.090(C)(2) nor has it identified good cause for the extension.

132.  UA has continued the investigation despite it being conducted in an unprofessional manner and in violation of the policies outlined in P01.04.

133.  UA's violations of its policies have caused and continue to cause Plaintiff irreparable damage as more fully described in this complaint.

134.  Because Plaintiff will suffer irreparable harm, Plaintiff seeks an injunction under AS 44.62.305 terminating the investigation because it was conducted in an unprofessional manner, is tainted, was not conducted in compliance with the required deadlines, and relied on up illegally obtained information in violation of criminal statutes.

135.  As a direct and proximate result of Defendant's actions and inactions, Plaintiff suffered injuries entitling him to receive compensatory damages and declaratory and injunctive relief against Defendants.

## SEVENTH CAUSE OF ACTION
## BREACH OF CONTRACT

### (Against UA)

136.  Plaintiffs incorporates by reference each previous paragraph of this Complaint as if fully copied and set forth at length herein.

137.  Plaintiff and Defendant UA entered into a contract by which Defendant offered admission to UA to Plaintiff and for which Plaintiff accepted UA's offer and attended UA.

138.  There was a mutual exchange of consideration by which Plaintiff attended the university involving payments and expenditure of time and UA made its services available to Plaintiff including educational opportunities.

139.  As part of the contract was the existence of policies set forth by the Board of Regents.  As a condition of attending UA, Plaintiff and UA were both expected to be bound by those policies.  Included within those policies were policies concerning sexual harassment.  These policies were part of the bargain between Plaintiff and UA.  Without agreeing to abide by those policies, Plaintiff would not have been permitted to attend UA.

140.  Defendant UA breached the contract as discussed more fully within this complaint by not investigating allegations of sexual harassment and non-consensual sexual contact by Plaintiff in accordance with Policy P01.04.

141.  As a result of Defendant UA's breach of the contract, Plaintiff has been damaged in that he has been forced to expend significant time and resources defending the allegations where the investigation was tainted by Defendant Parkey and where the investigation was not completed in accordance within the timeline established within the policies.

142. Plaintiff seeks specific performance of the contract requiring Defendants to terminate the investigation because (1) it was conducted in an unprofessional manner in violation of the policies forming the basis of the contract and (2) it was not completed promptly as required without demonstration of good cause in violation of the policies forming the basis of the contract.

## EIGHTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

### (Against UA)

143. Plaintiffs incorporates by reference each previous paragraph of this Complaint as if fully copied and set forth at length herein.

144. Defendant UA expressly warranted to Plaintiff that he would be treated in accordance with the policies of UA as set forth by the Board of Regents. This express warranty was made directly to Plaintiff though matriculation materials and Plaintiff was required to acknowledge his willingness to comply with UA's policies which were made available to Plaintiff.

145. As part of his agreement to attend UA, Plaintiff relied upon UA's express warranty that both he and UA would be bound by those policies.

146. Plaintiff did attend UA under the contract between Plaintiff and UA.

147. UA expressly warranted that it would be bound by the policies of the Board of Regents.

148.   As part of the notification that Plaintiff was being accused of sexual harassment and non-consensual sexual contact, UA represented to Plaintiff that the investigation would be conducted in accordance with Policy P01.04.

149.   Contrary to that representation, the investigation was not conducted in accordance with the policy as set forth throughout this complaint.

150.   As such, UA breached its express warranty to Plaintiff.

151.   As a direct and proximate result of Defendant's actions and inactions, Plaintiff suffered injuries entitling him to receive compensatory damages and declaratory and injunctive relief against Defendants.

## NINTH CAUSE OF ACTION
## NEGLIGENCE

### (Against Defendants Childress and Parkey in their Individual Capacities)

152.   Plaintiffs incorporates by reference each previous paragraph of this Complaint as if fully copied and set forth at length herein.

153.   Defendants Childress and Parkey owed a duty to Plaintiff to investigate accusations of sexual harassment and non-consensual sexual contact against him in a professional manner and in accordance with the policies of UA.

154.   Childress and Parkey breached this duty because the investigation was conducted by Parkey in an unprofessional manner and was tainted because of his

conduct. At all times Childress was aware of Parkey's conduct and did not take corrective action.

155. Because of the breach of duty, Plaintiff has been forced to suffer severe emotional distress as well as damage to his academic career. This emotional distress is a direct consequence of Childress' and Parkey's actions and inactions and was a foreseeable consequence.

156. As a result of Childress' and Parkey's negligence, Plaintiff is entitled to recover compensatory damages in an amount that exceeds $75,000.

## TENTH CAUSE OF ACTION
## NEGLIGENCE

### (Against Defendant McCarthy in his Individual Capacity)

157. Plaintiffs incorporates by reference each previous paragraph of this Complaint as if fully copied and set forth at length herein.

158. Defendant McCarthy owed a duty to Plaintiff to not use materials obtained through illegal eavesdropping for any purpose.

159. McCarthy had access to surveillance video that contained audio in violation of Alaska's eavesdropping laws.

160. Plaintiff engaged in conversations which neither he nor to the best of his knowledge any other participant in the conversations were being audio recorded.

161. Audio recording of such conversations is illegal under AS 42.20.310.

162. McCarthy knew or should have known that sharing surveillance audio in this instance was a violation of AS 42.20.310.

163. McCarthy breached his duty to Plaintiff by sharing surveillance audio in violation of AS 42.20.310.

164. Because of the breach of duty, Plaintiff has been forced to suffer severe emotional distress as well as damage to his academic career. This emotional distress is a direct consequence of McCarthy's actions and inactions and was a foreseeable consequence.

165. As a result of McCarthy's negligence, Plaintiff is entitled to recover compensatory damages in an amount that exceeds $75,000.

## RELIEF REQUESTED

166. Wherefore the Plaintiff respectfully prays this Honorable Court will GRANT the following relief:

    a. For declaratory relief that Defendants' conduct violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution

    b. For injunctive relief declaring that Defendants' actions unlawful, and enjoining preliminarily and permanently, investigation of Plaintiff because the investigation was conducted in an unprofessional manner,

it was tainted, it was not conducted promptly, and that evidence obtained through illegal eavesdropping be excluded.

c. Order UA to cease surveillance which includes audio recording conducted without the consent of the parties to the conversation.

d. Award the Plaintiff compensatory, general, and special damages as appropriate and as permitted by law.

e. Award the Plaintiff punitive damages as appropriate and as permitted by law.

f. Award the Plaintiff costs, fees and expenses as appropriate.

g. Grant the Plaintiff injunctive relief as appropriate.

h. Provide any other Relief this Court might deem fair, just, and equitable.

## JURY TRIAL DEMANDED

167. Plaintiffs hereby demand a trial by jury on all issues stated in this action.

Date: April 13. 2020

Respectfully Submitted,

*/s/Keith Altman*
Keith Altman (*pro hac vice to be applied for*)
The Law Office of Keith Altman
33228 West 12 Mile Road - Suite 375
Farmington Hills, MI 48331
516-456-5885
kaltman@lawampmmt.com