**Keith Altman (*pro hac vice*)**
**The Law Office of Keith Altman**
**33228 West 12 Mile Road, Suite 375**
**Farmington Hills, MI 48334**
**(516)456-5885**
**kaltman@lawampmmt.com**

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**

| | |
|---|---|
| **DANIEL MACDONALD,** <br><br> **PLAINTIFF,** <br><br> **V.** <br><br> **THE UNIVERSITY OF ALASKA, SARA CHILDRESS IN HER INDIVIDUAL AND SUPERVISORY CAPACITY, CHASE PARKEY IN HIS INDIVIDUAL AND SUPERVISORY CAPACITY, SEAN MCCARTHY, JON TILLINGHAST, AND JOHN DOES 1-25** <br><br> **DEFENDANTS.** | **Case: 1:20-cv-00001-SLG** <br> **Hon: Sharon L. Gleason** |

**PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED ON AN EXPEDITED BASIS**

NOW COMES Plaintiff, Daniel MacDonald, by and through his attorney Keith Altman of the Law Office of Keith Altman, for his emergency Motion for a Temporary Restraining Order and Preliminary Injunction pursuant to Fed. R. Civ. P. 65.

For the reasons stated in the attached brief, Plaintiff Daniel MacDonald respectfully requests that this Honorable Court grant the motion.

Respectfully submitted,


Dated: April 19, 2020    /s/ Keith L. Altman
           Keith Altman (*pro hac vice*)
           The Law Office of Keith Altman
           33228 West 12 Mile Road, Suite 375
           Farmington Hills, MI 48334
           (516)456-5885
           kaltman@lawampmmt.com

           *Attorney for Plaintiff*

**Keith Altman (*pro hac vice*)**
**The Law Office of Keith Altman**
**33228 West 12 Mile Road, Suite 375**
**Farmington Hills, MI 48334**
**(516)456-5885**
**kaltman@lawampmmt.com**

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

| | |
|---|---|
| **DANIEL MACDONALD,**<br><br>              **PLAINTIFF,**<br><br>**V.**<br><br>**THE UNIVERSITY OF ALASKA, SARA CHILDRESS IN HER INDIVIDUAL AND SUPERVISORY CAPACITY, CHASE PARKEY IN HIS INDIVIDUAL AND SUPERVISORY CAPACITY, SEAN MCCARTHY, JON TILLINGHAST, AND JOHN DOES 1-25** | **Case: 1:20-cv-00001-SLG**<br>**Hon: Sharon L. Gleason** |

**BRIEF IN SUPPORT OF PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED ON AN EXPEDITED BASIS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES _____ iii

STATEMENT OF RELEVANT FACTS_____ 1

LEGAL STANDARD _____ 4

ARGUMENT _____ 7

  I.   Plaintiff MacDonald Will Likely Succeed on the Merits_____ 8

    A.  Defendant Chas Parkey's Investigation Violated Plaintiff's Due Process Rights Guaranteed by The Fifth and Fourteenth Amendments to The U.S. Constitution ___ 8

    B.  The Investigation Was Not Completed Timely as Outlined in The Policies and Was Not Extended for Good Cause, Nor Did Good Cause Exist _____ 14

  II.  Plaintiff Will Suffer Irreparable Harm in the Absence of the Requested Relief __ 16

  III.   The Interests of Third-Parties and the Public Weigh in Favor of Injunctive Relief 18

  CONCLUSION _____ 19

# TABLE OF AUTHORITIES

**Cases**

*All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ...................... 7, 8, 16

*Charfauros v. Bd. of Elections*, 2001 U.S. App. LEXIS 15083 (9th Cir. May 10, 2001).. 6, 9

*Cuviello v. City of Vallejo*, 944 F.3d 816 (9th Cir. 2019) ................................. 17

*de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ........................ 17, 18

*Goss v. Lopez*, 419 U.S. 565 (1975) ........................................................ 5, 8

*Krainski v. State ex rel. Bd. of Regents*, 616 F.3d 963 (9th Cir. 2010) .......................... 5, 8

*Powell v. Mont. State Univ.*, 2018 U.S. Dist. LEXIS 215891 (D. Mont. Dec. 21, 2018) . 14

*Stivers v. Pierce*, 71 F.3d 732 (9th Cir. 1995) ................................................ 6, 9

*Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008) ................................. 6, 7

**Statutes**

20 U.S.C. § 1232g ("FERPA") ............................................................ 11

Title IX (20 U.S.C. § 1681, *et seq*.) ........................................................ 1, 9

**Constitutional Provisions**

U.S. Const. Amend 5 .................................................................... 4, 18

U.S. Const. Amend. 14 ................................................................. 4, 8, 18

**Rules**

Fed. R. Civ. P. 65 ........................................................................ 4

P01.04 ................................................................................. 5

## STATEMENT OF RELEVANT FACTS

Plaintiff Daniel MacDonald recently commenced an action against Defendants seeking declaratory relief, injunctive relief, and damages relating to Defendant University of Alaska's ("UA") investigation of allegations of sexual harassment and non-consensual sexual contact lodged against Plaintiff in violation of Title IX (20 U.S.C. § 1681, *et seq*.). (ECF # 1). Through the instant motion, Plaintiff respectfully requests that the Court enjoin Defendants under Fed. R. Civ. P. 65 from continuing the investigation of Plaintiff's conduct and allow Plaintiff to complete his studies without reference to these allegations.

Further support for bringing this motion on an expedited basis is that UA has sought to re-interview Plaintiff by the new investigator within the next week or so. See Declaration of Daniel MacDonald, Exhibit "A", ¶ 23. As discussed in his complaint and throughout this motion, Plaintiff fears that continuing the investigation is severely prejudicial to Plaintiff since the previous investigation was so tainted that it is highly unlikely that Plaintiff can receive a fair and impartial hearing.

To protect the privacy of individual non-parties involved in this lawsuit, Plaintiff will be using the pseudonyms Able, Baker, Cable, and Davis. Able is the complainant concerning the verbal jokes and comments leading to the charge of sexual harassment. Baker is the complainant concerning non-consensual sexual contact. Cable and Davis are additional witnesses who were interviewed during the investigation.

In accordance with policy R01.04.090[1], policies are set forth concerning the investigation of complaints of sexual harassment. Subsection A sets forth the conduct of the investigation. Subsection C of R01.04.090 sets forth that the investigation **will** be completed and a final report issued within approximately 50 days. The timeline may be extended for good cause for which the parties must be notified.

On November 8, 2019, Plaintiff received a letter from Defendant Childress that he was under investigation for sexual harassment and non-consensual sexual contact. Exhibit "A", ¶11, Exhibit "C". In the letter, Plaintiff was advised that Defendant Parkey would be conducting the investigation. Exhibit "C". Furthermore, Plaintiff was promised a "prompt and impartial" investigation. *Id.* A reference to UA's sexual harassment policy, P01.04, was made within the letter implying that the investigation would be conducted under that policy. *Id.*

The investigation was to be completed by December 28, 2019, under R01.04.090(c). Exhibit "B", p. 18. If good cause existed for an extension of time, Plaintiff was to be notified and provided with the basis for the extension. *Id.* at p. 19. At no time before December 28, 2019, was the Plaintiff informed of the investigation being extended. Exhibit "A", ¶ 15. Not only was the investigation not completed by December 28, 2019,

---

[1] See Regents' Policy chapter 01.04 on sexual discrimination, section P01.04.110(A)(1)(a) located at https://www.alaska.edu/bor/policy/01-04.pdf. Plaintiff respectfully requests that this Court take judicial notice of UA's policies under F.R.E. 201. UA is public institution of higher learning chartered by the State of Alaska and is an agent of the State. The above polices are made available to the public and are provided by UA on its website. Furthermore, this document was referenced by Defendant UA in correspondence directed at Plaintiff. Attached as Exhibit "B".

but the investigator appointed by UA was ultimately removed. Exhibit "A", ¶ 19, Exhibit "D".

During the investigation, several witnesses were interviewed. Exhibit "A", ¶16. Plaintiff had an opportunity to review those interviews and other evidence. *Id.* On January 27, 2020, Plaintiff wrote to Defendant Parkey and UA that there was a belief that the investigation had been done in an unprofessional manner that so tainted the investigation that it was highly unlikely that Plaintiff could receive a fair and impartial adjudication. Exhibit "A", ¶ 18, Exhibit "D".

On March 2, 2020, Defendant Childress emailed Plaintiff and informed him that the investigator was being reassigned. No explanation as to good cause for the extension of the investigation was provided. Exhibit "A", ¶ 19, Exhibit "E". In response, on March 3, 2020 Plaintiff's counsel emailed Defendant Childress and pointed out that the timelines for the investigation had elapsed and that good cause for an extension did not exist. Exhibit "A", ¶20, Exhibit "F".

Despite awareness of the tainted investigation and it not being conducted in a timely manner, UA intends to proceed with investigating the matter. Exhibit "A", ¶19-24, Exhibit "E", "F", "G".

During the pendency of this investigation, Plaintiff has suffered and continues to suffer severe emotional distress. Exhibit "A", ¶25. He is severely depressed and has attempted suicide. *Id.* ¶26. His physical health has also suffered in that he has lost significant weight and is losing hair. *Id.* ¶ 27.

Plaintiff's academic career is also suffering. He is intending to pursue a career in archaeology and has been delayed because of the ongoing investigation. *Id.* 28.

Plaintiff brings this motion and the associated lawsuit claiming that the conduct of the investigation has violated his due process rights, breached the contract he had with UA incorporating the sexual harassment policy, and that UA violated the Alaska administrative procedures act. He also brings other claims which are not subject to this motion for a TRO/preliminary injunction.

Time is of the essence concerning this motion. Defendants are intending to continue the investigation by interviewing Plaintiff within the next week or so. Allowing the investigation to continue will subject Plaintiff to further damages. Furthermore, if the investigation is allowed to continue in violation of Plaintiff's due process rights, he will suffer irrespective of the outcome. If he is vindicated, he loses much additional time and his health deteriorates. If he is found to have been responsible, it is because the process has been completely corrupted by the unprofessional investigation conducted thus far.

## LEGAL STANDARD

Under the Fifth Amendment to the U.S. Constitution, "no person shall be deprived of life, liberty, or property without due process of law." This provision of the Fifth Amendment applies to States under the Fourteenth Amendment of the U.S. Constitution. The Supreme Court has made clear that severe sanctions of students require that the student be afforded due process:

The Court's view has been that as long as a property deprivation is not *de minimis*, its gravity is irrelevant to the question whether account must be taken of the Due Process Clause. *Sniadach* v. *Family Finance Corp*., 395 U.S. 337, 342 (1969) (Harlan, J., concurring); *Boddie* v. *Connecticut*, 401 U.S. 371, 378-379 (1971); *Board of Regents* v. *Roth, supra*, at 570 n. 8. A 10-day suspension from school is not *de minimis* in our view and may not be imposed in complete disregard of the Due Process Clause.

*Goss v. Lopez*, 419 U.S. 565, 576, 95 S. Ct. 729, 737 (1975)

Expanding upon Goss, the Ninth Circuit opined on the elements of a due process claim in an educational context:

A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection. *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist*., 149 F.3d 971, 982 (9th Cir. 1998).
…

The Supreme Court has had occasion to consider this threshold inquiry in several cases. First, in *Goss v. Lopez*, 419 U.S. 565, [*971] 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975), the Supreme Court held that temporary suspensions of public high school students without notice or a hearing implicated the students' protected interest in "avoid[ing] unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences." *Id*. at 576. The Court reasoned that, "[h]aving chosen to extend the right to an education to people of appellees' class generally, [the state] may not withdraw that right on grounds of misconduct absent, fundamentally fair procedures to determine whether the misconduct has occurred." *Id*. at 574.

*Krainski v. State ex rel. Bd. of Regents*, 616 F.3d 963, 970-71 (9th Cir. 2010)

In adjudicating disciplinary charges, "[t]he right to an impartial decision maker is a fundamental right which requires due process of law before it is denied." *Charfauros v.*

*Bd. of Elections*, No. 99-15789, 2001 U.S. App. LEXIS 15083, at *44 (9th Cir. May 10, 2001). "It is well-settled that the Due Process Clause prevents the state from depriving a plaintiff of a protected property interest without "a fair trial in a fair tribunal." (Citing to *In re Murchison,* 349 U.S. 133, 136, 99 L. Ed. 942, 75 S. Ct. 623 (1955)). *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995)

Turning to the standard for injunctive relief, courts must consider four factors when deciding whether to grant a temporary restraining order ("TRO") or preliminary injunction: (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the requested relief; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest is served by issuance of the TRO or injunction. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

The Ninth Circuit reviewed the decision in *Winter* when it concluded the following:

> A preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.
>
> *Lands Council*, 537 F.3d at 987 (internal quotations and modification omitted). Of course, plaintiffs must also satisfy the other *Winter* factors. To the extent prior cases applying the "serious questions" test have held that a preliminary injunction may issue where the plaintiff shows only that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor, without satisfying the other two prongs, they are superseded by *Winter*, which requires the plaintiff to make a showing on all four prongs. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). But the "serious questions" approach survives *Winter* when applied as part of the four-element [**21] *Winter* test. That is, "serious questions going to the merits" and a balance of hardships that tips sharply towards the

plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.

*All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)

## ARGUMENT

Plaintiff MacDonald is entitled to a temporary restraining order and a preliminary injunction to enjoin Defendants from continuing an investigation into allegations that Plaintiff engaged in sexual harassment and non-consensual sexual contact in violation of Plaintiff's due process rights.

Although Plaintiff was promised a timely, fair, and impartial adjudication of the allegations against him Plaintiff received anything but. As discussed more fully below, the investigation was tainted to the point that it is highly unlikely Plaintiff can receive a fair and impartial adjudication. Furthermore, it cannot be reasonably contested that the investigation was conducted within the time requirements of UA's policies and the timeline was not extended for good cause.

As discussed in more detail below, Plaintiff MacDonald has a strong likelihood of success on the merits, he will suffer irreparable harm if the investigation is allowed to continue, the injunction will not cause any harm, substantial or otherwise, to others, and the public interest is served by the issuance of the TRO or injunction. Thus, he meets the requirements of *Winter* and *All. For The Wild Rockies v. Cottrell*. This Court should grant Plaintiff's motion and issue a TRO and a preliminary injunction enjoining Defendants for continuing the investigation into allegations of Plaintiff's sexual misconduct. Furthermore,

this Court should allow Plaintiff to complete his education at UA without reference to the allegations.

### I. Plaintiff MacDonald Will Likely Succeed on the Merits

Although Plaintiff MacDonald has a strong likelihood of success on the merits concerning his claims, to satisfy the first prong of the preliminary injunction analysis, Plaintiff is not required to demonstrate that he *will* succeed on the merits at trial. Nor is Plaintiff required to demonstrate that he will ***probably*** succeed on the merits of his claims. He must demonstrate that there are serious questions going to the merits and the balance of hardships tips in Plaintiff's favor. *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Plaintiff's due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution have been violated by Defendants. Allegations of sexual harassment and non-consensual sexual contact were lodged against Plaintiff. See Exhibit "C". Under the policies of UA, if Plaintiff has been found to have engaged in the alleged activities, he is subject to suspension, expulsion, or revocation of degree. See Exhibit "B", p. 21, P01.04.111(A)(1)(a). Because Plaintiff is subject to severe sanctions if found to have engaged in the alleged conduct, he is entitled to due process in the investigation of the allegations. See *Goss*, 419 U.S. 565, 576 (1975) and *Krainski*, 616 F.3d 963, 970-71 (9th Cir. 2010).

### A. Defendant Chas Parkey's Investigation Violated Plaintiff's Due Process Rights Guaranteed by The Fifth and Fourteenth Amendments to The U.S. Constitution

Defendant Chase Parkey conducted the investigation in an unprofessional manner and in a way which violated Plaintiff's constitutional right to due process. As discussed below, Parkey did not act impartially and he conducted his investigation in a biased manner which irreparably tainted the witnesses against Plaintiff. Thus Plaintiff was not provided the impartial forum as required under *Charfauros v. Bd. of Elections* and *Stivers v. Pierce.*

Parkey's language in the transcribed interviews was unprofessional and crude and bordered on Title IX violations itself. One example of this behavior is in the 11/13/2019 interview with Baker, wherein he stated:

> Are you aware of anything about [Daniel] talking to Able saying other girls have nice asses? What was the term he used? Or commenting on a girl's ass? (p. 2/31 of Baker's Interview on 11/13/2019)[2].

There was no reasonable explanation for speaking to an alleged victim or witness in such crude terms. It is also clear from the context that he was not specifically quoting Daniel here. Additionally, Parkey related details to witnesses incorrectly, such as when talking to Baker, he described Daniel as having said that he was on top of Baker when Daniel had actually described the incident to Parkey as Baker being on top.

Furthermore, in Baker's 11/6/2019 interview, Parkey appears to urge Baker to file a complaint, tells her that there are other complaints against Daniel, and other inappropriate comments, such as:

---

[2] Several reference are made to the transcripts in the initial investigation. Those transcripts are solely in the possession of Defendants and were only made available to Plaintiff for a brief time for him to review.

> I mean, I can't be biased because then I can't investigate it. But you're not the only one. And again, I could only say that because you know it.
>
> You're not the only one. And I think if you were to talk to Able and not obviously pressure her, but ask her if she would consider doing the investigation as well. I can do both at the same time. (p. 12/17 of Baker's Interview on 11/6/2019).

Parkey also told Baker that it was okay to talk to other students about the investigation, which is particularly disturbing given the context of Baker wondering if that would be "retaliation":

> Baker: And with me, like telling my friends about what happened. Would that be considered retaliation against him?
>
> Parkey: It depends on how you tell them. If you go walking around campus with a sign, maybe. If you just talk to someone like you do with Ke** or Able, no. (p. 13/17 of Baker's Interview on 11/6/2019).

Another disturbing comment from Parkey is when he told Baker that he, "cannot tell Able that I talked to [Baker]." (p. 16/17 of Baker's Interview on 11/6/2019). This is particularly interesting given that it shows that Parkey knew he should not be talking about other witnesses' statements and claims, even though he does exactly that many times in the interviews with witnesses, including telling Baker all kinds of confidential information about the investigation. Shortly after this segment of the conversation, Parkey begins telling her how to accumulate more witnesses to back up her statements, how to help move the investigation forward, etc. Id.

This became even more of an issue concerning Cable's comments about the retaliation and backlash that Daniel has been facing since the investigation began, such as

how "everybody now sees him as like a sexual predator because that's what's going around." (p.22/26 of Cable's 12/13/2019 Interview).

At Parkey's prompting, Baker told Professor Erica Hill that Plaintiff was a sexual predator and convinced her not to write a letter of recommendation for him.

In further violation of Plaintiff's due process rights, Parkey used improper interview and interrogation techniques. During Baker's 11/6/2019 interview, Parkey bragged of having been a law enforcement officer, and the techniques employed showed. Law enforcement officers are often trained in Reid-style interview and interrogation techniques, which are used primarily to extract confessions. However, these techniques can often badger and manipulate a witness when used improperly.

An example of this occurs in Cable's 12/13/2019 interview, where Parkey appears to be trying to persuade Cable to speculate about Daniel when she kept answering that she does not know. (pp. 15-17/26 of Cable's 12/13/2019 Interview).

This is also evident in Davis' 11/14/2019 interview, where Parkey presented leading questions to coax Davis into agreeing with his preconceived notions of the facts, rather than actually allowing Davis to explain events in his own words. (pp. 8-9 of Davis' 11/14/2019 Interview).

Parkey's conduct also violated Plaintiff's rights under the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"). There are multiple examples throughout the transcripts of interviews where Parkey disclosed confidential information about the pending investigation. One particularly egregious example occurs in Able's 11/14/2019 interview, wherein he first states that "[Daniel's] termination from an RA had nothing to

do with Title 9 whatsoever. I'm not sure where that came from." However, he goes further and states specifically that, "[Daniel] has admitted to saying inappropriate things to [Able]. He has owned up to that fact." (p. 15/16 of Able's Interview of 11/14/2019).

While Parkey may have been disclosing this information to Able in some form to ingratiate him to her such that she gives up more information during the interview, it is highly inappropriate.

On January 27, 2020, counsel representing Plaintiff in the investigation wrote a letter to Defendant Parkey and UA authorities relaying the circumstances of the investigation. Exhibit "D". As a result of the letter, Parkey was removed from the investigation.

Defendant Parkey's inappropriate conduct during the investigation virtually assured that Plaintiff would not be given a fair and equitable treatment of the allegations lodged against him. Furthermore, Parkey tainted the witnesses by providing information to the which further prevents Plaintiff from receiving fair treatment in the investigation of the allegations.

This becomes even more troubling when the standard for finding a violation of the rules is "preponderance of the evidence" standard and not "beyond a reasonable doubt" as would be required in criminal prosecution. Furthermore, state and federal rules of evidence do not apply during these proceedings. There is no way to "unring" the bell here. These witnesses are tainted to the point that given the very low "preponderance of the evidence" the violations of Plaintiff's due process rights cannot be remedied if the investigation is

allowed to proceed. Without question, Parkey did not act impartially as required under due process.

In addition, although Plaintiff there are questions as to whether the inability to cross-examine witnesses violates due process concerns as is the case in this matter:

> Here, Plaintiff has raised issues of bias on the part of persons assigned to his case by MSU and who were charged with the responsibility to undertake and carry out the investigation and disciplinary process. Unresolved issues of material fact relevant to those matters remain. The Court, on the present record, cannot conclude or undertake to conclude that one or more of those involved in the investigation did not prejudge a material issue and thereby taint the entire investigation with bias.

> Some courts have concluded generally that a university student facing disciplinary charges and suspension does not have the right to cross-examine witnesses against him. [*Citing to Gorman v. Univ. of R.I.*, 837 F.2d 7, 16 (1st Cir. 1988)]However, in *Doe v. University of Cincinnati* [*Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400 (6th Cir. 2017)], the Sixth Circuit determined that cross-examination was required in a sexual assault proceeding where the accused student faced a two-year suspension.

> As recently as September 2018, the Sixth Circuit reaffirmed its holding in *Doe* [*Citing to Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018)], reiterating that "when [a] university's determination turns on the credibility of the accuser, the accused, or witnesses, that hearing must include an opportunity for cross-examination." [Id. at 581]. Although the Ninth Circuit has not yet adopted the Sixth Circuit's requirements, it has expressed its view that a charge resulting in a disciplinary suspension of a student "may require more formal procedures" to satisfy components of our system of constitutional due process. [Citing to <u>*Oyama v. Univ. of Haw.*, 813 F.3d 850, 875 (9th Cir. 2015)</u>.]

> Like both *Doe* and *Baum*, the decision made by MSU was a "he said/she said" dispute turning on credibility. [Citing to *Baum*, 903 F.3d at 583]. Specifically, MSU's investigation hinged on what was said between two parties during a private conversation. "[I]f a

university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process." [Citing to *Baum*, 903 F.3d at 581]. As stated above, unresolved issues of fact material to Plaintiff's due process claim remain which preclude summary judgment on the issue.

*Powell v. Mont. State Univ.*, No. CV 17-15-BU-SEH, 2018 U.S. Dist. LEXIS 215891, at *16-18 (D. Mont. Dec. 21, 2018)

Therefore, this Court should look with great concern at the initial investigation which was the same he said/she said situation as in Powell with no cross-examination that was conducted in an unprofessional and partial manner leading to the likely bias of the witnesses. Surely the instant situation cannot stand scrutiny under Plaintiff's due process rights.

**B. The Investigation Was Not Completed Timely as Outlined in The Policies and Was Not Extended for Good Cause, Nor Did Good Cause Exist**

Plaintiff's due process rights were further violated by Defendants' failure to adhere to the strict timelines outlined in the sexual harassment policies. By not adhering to the timelines, Plaintiff has been harmed as discussed in more detail below.

Plaintiff was informed of the investigation on November 8, 2019. According to the policies, the investigation had to be concluded by approximately December 28, 2019, unless extended for good cause.

On January 27, 2020, Plaintiff and his advocate wrote to Defendant Parkey and supervisors concerning the unprofessional conduct of the investigation. Exhibit "D". At

that time, the investigation had not been completed nor had Plaintiff been informed that the investigation would be extended for good cause.

On March 2, 2020, Defendant Childress emailed Plaintiff informing him that the investigation was being reassigned and that Defendant Parkey was no longer investigating the matter. Exhibit "E". The email did not explain the basis for continuing the investigation and certainly did not identify good cause for extending the investigation. At no time before March 2, 2020, was Plaintiff informed that the investigation would be extended for good cause.

On March 3, 2020 Plaintiff's advocate informed Defendant Childress that there was no basis for extending the investigation. Exhibit "F". At no time did good cause exist for extending the investigative timeline:

- Complex circumstances did not exist in this matter. Essentially, the incident was a he said/ she said situation.

- There were no difficulties with the availability of evidence or individuals. Several individuals were interviewed by Defendant Parkey.

- Law enforcement was not involved with the incident.

- School breaks were not a factor in the investigation.

- There were no other legitimate bases for an extension.

- Neither the complainant nor the respondent requested an extension of time.

In fact, the investigator Defendant Chase Parkey performed the investigation in a poor manner leading to his removal as the investigator. Parkey was a supervisory employee

of UA and investigations allegations such as this matter was within the scope of his employment. Investigating in a manner which irreparably violated Plaintiff's due process rights does not constitute good cause for extending the investigation.

UA has not investigated the manner as outlined in its policies. Because the time for the investigation was not completed within 50 days as outlined in the UA policies and there is no good cause for an extension, continuing to investigate this matter violates Plaintiff's due process rights.

Overall, despite knowledge of the unprofessional and tainted investigation as well as the failure to adhere to the required timelines, Defendants are intending to continue the investigation in violation of the policies set forth under P01.04. Exhibit "G". Plaintiff has set forth "serious questions going to the merits" as required under *All. For The Wild Rockies v. Cottrell*. UA is seeking to interview Plaintiff, probably in the next week. *Id.* As such, Plaintiff respectfully requests that this Court act quickly in considering this motion.

## II. Plaintiff Will Suffer Irreparable Harm in the Absence of the Requested Relief

MacDonald will suffer irreparable harm without the issuance of injunctive relief. As stated above, MacDonald is likely to succeed on the merits of his due process claim. Every day that Plaintiff continues to be denied the ability to continue his education is lost time which cannot ever be recovered. Furthermore, he suffers severe emotional distress knowing that he has been wrongly accused and that the process has been so corrupted that without this Court's involvement, he is unlikely to receive a fair and impartial adjudication of the charges against him.

Any violation of a constitutional right, no matter how minimal, presumptively constitutes irreparable harm. *See Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) ("Third, our cases do not require a strong showing of irreparable harm for constitutional injuries."); *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("We now turn to the next part of the preliminary injunction test: irreparable harm. It is well established that the deprivation of constitutional rights "unquestionably constitutes irreparable injury."") (citing *Elrod v. Burns*, 427 U.S. 347, 373, (1976)).

Here, Plaintiff has been subjected to an investigation that has not been conducted in accordance with his due process rights to a fair and impartial investigation of the charges against him. The investigation has been delayed beyond its established time limits without good cause and the investigation itself has been tainted by the unprofessional conduct of the original investigator. It is highly unlikely that Plaintiff can receive a fair and impartial adjudication of the charges.

During the pendency of this investigation, Plaintiff has suffered and continues to suffer severe emotional distress. Exhibit "A", ¶25. He is severely depressed and has attempted suicide. *Id.* ¶26. His physical health has also suffered in that he has lost significant weight and is losing hair. *Id.* ¶ 27. Plaintiff's academic career is also suffering. He is intending to pursue a career in archaeology and has been delayed because of the ongoing investigation. *Id.* 28.

Each day he is subject to the due process violations he suffers emotional distress and his pursuit of continued education has been delayed. These effects cannot be recovered and the longer Plaintiff has to wait for relief, the more the irreparable harm he will suffer.

Therefore, Plaintiff has established that he is likely to suffer irreparable harm if this Court does not grant immediate injunctive relief.

## III. The Interests of Third-Parties and the Public Weigh in Favor of Injunctive Relief

Finally, the last two factors – substantial harm to others and the public interest – weigh in Plaintiff's favor as well. Here, Defendants' desire to continue an investigation that is being conducted in violation of UA's policies and after the investigation has been irreparably tainted by the conduct of the former investigator in violation of Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.

As demonstrated above, Plaintiff will suffer irreparable harm should the investigation be allowed to continue while the Court adjudicates the merits of Plaintiff's claims. On the other hand, UA and the other defendants will suffer no harm by this court entering a preliminary injunction. At a later time should this Court deny Plaintiff's injunctive relief outlined in the complaint, UA may continue its investigation. As to the alleged victim of the alleged acts, the incident does not impede her educational progress and she is currently able to move on with her life choices.

The issuance of injunctive relief would vindicate the public's interest in preserving fundamental individual constitutional rights. *See de Jesus Ortega Melendres* at 1002. ("We agreed in *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002),

that "'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Id.* at 974, *quoting G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).")

Thus using the approach outlined in *Winter* and *All. For The Wild Rockies v. Cottrell,* the balance of hardships tilts "sharply" towards Plaintiff.

Lastly, concerning the burden that an injunction will place on the parties, Defendants will not suffer any detriment. Suspending the investigation will not burden Defendants who can resume the investigation at a later time should the Court rule against Plaintiff on the merits. Furthermore, to the extent that there is a burden on Defendants, it would be *de minimus* and there is a vast difference between the resources available to Defendant University of Alaska and the resources of Plaintiff. Therefore, given the nature of the relief sought, the *de minimus* interference with Defendants' operations, and the vast disparity of resources between the parties, should this Court grant Plaintiff's motion and enter an injunction, no security should be required.

## <u>CONCLUSION</u>

Because of the foregoing, Plaintiff Daniel MacDonald respectfully requests that this Honorable Court grant his emergency motion for a temporary restraining order and preliminary injunction and enjoin UA and its agents from continuing with their investigation. Plaintiff has demonstrated that there are (1) "serious questions going to the merits"; (2) that he will likely suffer irreparable injury; (3) that he will suffer more if the injunction is not granted than other parties will if the injunction is granted; and (4) that

there is a strong public interest in the protection of individuals constitutional rights. Furthermore, this Court should order that UA allow Plaintiff to complete his studies at UA with no references to the allegations of sexual harassment and non-consensual sexual contact.

Respectfully submitted,

Dated: April 19, 2020

/s/ Keith L. Altman
Keith Altman (*pro hac vice*)
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334
(516)456-5885
kaltman@lawampmmt.com

*Attorney for Plaintiff*

# **CERTIFICATE OF SERVICE**

On <u>April 19, 2020</u>, I served a copy of the foregoing Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, in the above-captioned matter by ECF and e-mail to:

Sara Childress (sgchildress@alaska.edu)
Chase Parkey (ctparkey@alaska.edu)
Jon Tillinghast (jon@stsl.com)
Jim Johnsen (ua.president@alaska.edu) (President of University of Alaska)
Teresa Thompson (tathompson2@alaska.edu) (Executive Assistant to the President)
Michael Hostina (legal@alaska.edu) (General Counsel, University of Alaska)
Sean McCarthy (slmccarthy@alaska.edu)


*/s/Keith Altman*
Keith Altman