# EXHIBIT B

# REGENTS' POLICY
## PART I – MISSION AND GENERAL PROVISIONS
### Chapter 01.04 – Sexual and Gender-Based Discrimination

The Board of Regents of the University of Alaska System affirms its commitment to a safe and healthy educational and work environment in which educational programs and activities are free of discrimination on the basis of sex. The board further affirms its commitment to respond appropriately to sexual harassment and sexual violence, in accordance with applicable law as amended from time to time, including Title IX of the Education Amendments of 1972, the Violence Against Women Reauthorization Act, Title VII of the Civil Rights Act of 1964 (which prohibits discrimination on the basis of sex in employment), Alaska Statute 18.80, and due process of law.

1. Chancellors will have primary responsibility for a campus educational and workplace climate free from discrimination and intimidation based on sex, and for appropriate and timely response to sexual harassment and sexual violence at their respective universities, including extended sites;

2. Chancellors will provide updates to the board regarding compliance with this sex discrimination and sexual misconduct policy at least bi-annually in December and June and more often as required by circumstances; and

3. The president will ensure system oversight and coordination among the universities in implementing this policy.

**P01.04.010. Sex Discrimination and Sexual Misconduct Policy.**

A. The university will not tolerate sexual or gender-based discrimination, including sexual misconduct such as sexual harassment or sexual assault, whether done by university employees, students, or third parties (i.e., non-members of the university community, such as vendors or visitors). Violation of this sex discrimination and sexual misconduct policy may lead to discipline of the offending party, including the possibility of separation from the university. Moreover, many forms of sexual and gender-based discrimination, including sexual harassment or sexual assault, may also violate state and federal law. Criminal prosecution may take place independently of any university-imposed disciplinary proceeding.

B. The university is committed to providing an environment free from sexual or gender-based discrimination, including sexual harassment or sexual assault, and to ensuring the accessibility of appropriate procedures for addressing all complaints of misconduct under this sex discrimination and sexual misconduct policy. The university will respond to complaints or reports of prohibited conduct with measures designed to stop the behavior, prevent its recurrence, and remediate any hostile environment it caused.

C. When allegations of sexual or gender-based discrimination or sexual misconduct are raised, this policy applies and, to the extent it conflicts with other university policies and procedures relating to misconduct, it supersedes those policies and procedures.

D. Since some members of the university community hold positions of authority that may involve the legitimate exercise of power over others, it is their responsibility to be sensitive to that power. Faculty and supervisors in particular, in their relationships with students and subordinates, need to be aware of potential conflicts of interest and the possible compromise of their evaluative capacity. Because there is an inherent power difference in these relationships, the potential exists for the less powerful person to perceive a coercive element in suggestions regarding activities outside those inherent in the professional relationship. See R04.02.024 Consensual Sexual Relationships.

(06-01-17)

## P01.04.020. Scope of Policy.

A. This policy applies to students, faculty, staff, and third parties. Third parties are both protected by and subject to this sex discrimination and sexual misconduct policy. A third party may make a complaint of or report sexual or gender-based discrimination, including sexual harassment or sexual assault. A third party may also be permanently barred from the university or subject to other restrictions for engaging in sexual or gender-based discrimination.

B. This policy applies to sexual or gender-based discrimination, including sexual misconduct such as sexual harassment or sexual assault, that occurs on property owned or controlled by the university, in university online environments and classes, or at activities sponsored by or authorized by the university. Behavior exhibited online or electronically via email, social media, text messaging, or other electronic means that involve the use of the university's computing and network resources will be deemed to have occurred on university property.

C. This policy applies to sexual or gender-based discrimination, including sexual misconduct such as sexual harassment or sexual assault, that occurs off university property when the conduct is associated with a university-sponsored program or activity, such as travel, research, or internship programs or when such conduct creates or could create a hostile environment on university property or in any university-sponsored program or activity. The policy also applies to any sexual or gender-based discrimination perpetrated by a university employee, regardless of location, if it occurs when the employee is conducting work for the university or on its behalf.

D. This policy may also apply to allegations of other misconduct, even if the misconduct is not itself sexual or gender-based, if the misconduct occurs in connection with sexual or gender-based discrimination. If the Title IX coordinator concludes this policy applies, Title IX coordinator may seek appropriate assistance from any university office with relevant experience or knowledge regarding the misconduct.

(06-01-17)

**P01.04.030. Title IX Coordinator.**

A.    Each university's Title IX coordinator is responsible for the university's compliance with Title IX of the Education Amendments of 1972. Each of the three separately accredited universities within the university system—UAA, UAF, and UAS—has a Title IX coordinator. Statewide employees are served by the Title IX coordinators in their geographic location. For purposes of the sex discrimination and sexual misconduct policy, references to the Title IX coordinator indicate the Title IX coordinator or their designated staff.  The Title IX coordinator's activities include (but are not limited to):

    a.    Communicating with all members of the university community regarding Title IX, and providing information about how individuals may access their rights;

    b.    Reviewing applicable university policies to ensure institutional compliance with Title IX;

    c.    Monitoring the university's administration of its own applicable policies, including record keeping, timeframes, and other procedural requirements;

    d.    Conducting training regarding Title IX and prohibited conduct defined in this sex discrimination and sexual misconduct policy; and

    e.    Responding to any complaint or report regarding sexual and gender-based discrimination, including sexual harassment or sexual assault. In this capacity, the Title IX coordinator oversees the investigation and resolution of such alleged misconduct, directs the provision of any remedial measures, and monitors the administration of any related appeal.

B.    Contact information and how to file a complaint with the Title IX coordinator is found in R01.04.060.

(06-01-17)

**P01.04.040. Confidentiality and Privacy.**

A.    Issues of privacy and confidentiality play important roles in this sex discrimination and sexual misconduct policy and may affect individuals differently. Privacy and confidentiality are related but distinct terms that are defined below. In some circumstances, the reporting responsibilities of university employees, or the university's responsibility to investigate, may conflict with the preferences of the complainant or respondent with regard to privacy and confidentiality. Therefore, all individuals are encouraged to familiarize themselves with their options and responsibilities.

B.    "Confidentiality" refers to the circumstances under which information will or will not be disclosed to others. The university makes available several professionals, identified in University Regulations, who have confidentiality obligations under the law. Conversations with these professionals are privileged. Information that an individual shares with them (including information about whether an individual has received services) will be disclosed

Case 1:20-cv-00001-SLG   Document 11-3   Filed 04/19/20   Page 4 of 23

to the Title IX staff or any other person only with the express written permission from the individual whose information will be disclosed, unless there is an imminent threat of serious harm to the individual or to others, or other legal obligation to reveal such information (e.g., if there is suspected abuse or neglect of a minor).

C.     "Privacy" refers to the discretion that will be exercised by the university in the course of any investigation or disciplinary process under this sex discrimination and sexual misconduct policy. The university has an obligation to make reasonable efforts to investigate and address complaints or reports of sexual or gender-based discrimination, including sexual harassment or sexual assault. In all such proceedings, the university will take into consideration the privacy of the parties to the extent possible. In cases involving students, the Title IX staff may notify other university employees of the existence of the complaint for the purpose of overseeing compliance with this sex discrimination and sexual misconduct policy. While not bound by confidentiality, these individuals will be discreet and will respect the privacy of those involved in the process. However, all parties should be aware that the university is a public institution subject to the Alaska Public Records Act and to requests for information in the course of litigation; as such, even records that are treated privately may become public.

(06-01-17)

## P01.04.050. Support Resources for Those Reporting Sexual Misconduct.

The university offers various resources for complainants, witnesses, or others affected by sexual or gender-based discrimination, including sexual harassment or sexual assault. Resources are identified in regulation.

(06-01-17)

## P01.04.060. Filing a Complaint or Report.

A.     University employees must immediately call 911 in emergency situations, if there is a suspected crime in progress, or if there are imminent or serious threats to the safety of anyone.

B.     "Responsible employees" must report any sexual or gender-based discrimination, regardless of who it involves, to the Title IX coordinator within twenty four hours. All University of Alaska staff, faculty and residence life student employees are designated "responsible employees," with the limited exception of licensed professional mental health counselors, clergy, other persons with a professional license requiring confidentiality who are working within that license, and those employees who work in the student health and counseling centers. Student employees, with the exception of those working for residence life, are not designated responsible employees at the University of Alaska.

C.     All members of the university community are encouraged to report any suspected sexual or gender-based discrimination, including sexual harassment or sexual assault, to the Title IX coordinator.

D. There is no time limit on reporting sexual and gender-based discrimination, including sexual harassment or sexual assault. Individuals who learn of sexual or gender-based discrimination are encouraged to report it promptly, regardless of when it occurred.

E. The university will provide amnesty for conduct that would warrant minor sanctions under the Student Code of Conduct, such as underage drinking or prohibited drug use, that is related to misconduct reported under this sex discrimination and sexual misconduct policy.

F. Alleged violations of federal, state, or local laws may also violate this sex discrimination and sexual misconduct policy and fall within the university's jurisdiction. The university reserves its right to pursue disciplinary and other action in response to potential sexual and gender-based discrimination, independent of the criminal proceedings. University proceedings under this sex discrimination and sexual misconduct policy may precede, follow, or take place simultaneously with criminal proceedings. University actions will not be subject to challenge on the grounds that criminal charges involving the same incident have been dismissed or reduced.

(06-01-17)

## P01.04.070. Complaint is Filed: The University's Immediate Actions and Interim Measures.

A. Upon receipt of a complaint or report of sexual or gender-based discrimination, including sexual harassment or sexual assault, the Title IX staff will promptly assess the risk, if any, the respondent presents to the complainant or other individuals and will take appropriate interim measures in response to that assessment to stop any discrimination, harassment, or sexual violence. Title IX staff will also inform the complainant and respondent in writing of the availability of reasonable and appropriate interim measures.

B. Requests for interim measures may be made by or on behalf of the complainant to Title IX staff. Title IX staff are responsible for ensuring the implementation of interim measures and coordinating the university's response with the appropriate offices on campus. The Title IX staff will determine which interim measures are necessary, and may provide interim measures to protect the complainant, students, university employees, or third parties, regardless of whether the complainant requests them or seeks formal disciplinary action. Interim measures may be applied as needed during any investigation and conduct process, including appeals, associated with the report of sexual or gender-based discrimination. The Title IX coordinator will take steps to ensure, where possible, that such interim measures do not negatively impact the complainant.

(06-01-17)

## P01.04.080. Informal Resolution of the Complaint.

A. Informal resolution is not appropriate for cases involving sexual assault, or in cases where a student alleges sexual harassment against a university employee. If the complainant, the respondent, and the Title IX coordinator all agree that an informal resolution should be pursued, the Title IX coordinator shall attempt to facilitate a resolution of the conflict that is agreeable to all parties. Under the informal process, the Title IX investigator shall be

required to conduct only such fact-finding as is useful to resolve the conflict and as is necessary to protect the interests of the parties, the university and the community.

B.      If informal resolution efforts fail to achieve satisfactory results, or if informal resolution is inappropriate in consideration of the circumstances or the egregious nature of the alleged behavior, the Title IX coordinator will initiate a formal resolution process.

(06-01-17)

## P01.04.090. Formal Resolution of the Complaint: Investigation.

A.      As part of the formal resolution process, a Title IX investigator will conduct a prompt, adequate, reliable, and impartial investigation. The Title IX investigator will utilize the formal resolution process even if the complainant does not choose to proceed with an informal or formal complaint, if the Title IX coordinator concludes such resolution is appropriate after taking into account the complainant's articulated concerns, the best interests of the university community, fair treatment of all individuals involved, and the university's obligations under Title IX.

B.      The university will use a preponderance of the evidence standard for resolving all complaints under this sex discrimination and sexual misconduct policy.

C.      After investigation, the Title IX investigator will determine whether the respondent violated this sex discrimination and sexual misconduct policy. The Title IX investigator will prepare a written report with the outcome of the investigation and the rationale for the outcome.  Title IX staff will simultaneously inform the parties of the outcome.

D.      In all cases, a formal resolution process that has been initiated will be pursued to conclusion, even if the complainant or respondent leaves the university before the process concludes, or the complainant chooses not to participate in the process. A student who is alleged to have engaged in sexual or gender-based discrimination may be prohibited from re-enrolling in the university until the allegations are resolved regardless of whether the student participates in the student conduct process.

(06-01-17)

## P01.04.100. Formal Resolution of the Complaint: Appealing Investigative Findings.

Both the complainant and respondent have the right to appeal the results of an investigation. Details are provided in University Regulation.

(06-01-17)

## P01.04.110. Formal Resolution of the Complaint: Discipline and Remedies.

A.      If the Title IX investigator determines that the respondent violated this sex discrimination and sexual misconduct policy and that determination is not appealed or is affirmed on appeal, a copy of the investigator's report or relevant findings on appeal will be given to the appropriate discipline authority. The discipline authority will determine the appropriate form of discipline or sanction.

B.     The Title IX coordinator will determine and implement appropriate remedies for a complainant or other affected students or employees, even if the respondent has left the university.

(06-01-17)

**P01.04.120. Conflicts of Interest of Those Investigating or Adjudicating a Complaint.**

A.     The university does not permit conflicts of interest, whether real or reasonably perceived, by those involved in investigating or adjudicating allegations of sexual or gender-based discrimination, including sexual harassment or sexual assault. Individuals who are involved in investigating or adjudicating allegations of sexual or gender-based discrimination and who believe they may have a conflict, whether real or reasonably perceived, must notify the Title IX coordinator immediately to permit the Title IX coordinator to take appropriate remedial steps.

B.     Any complainant or respondent who wishes to challenge on conflict of interest grounds the participation of an individual involved in investigating or adjudicating allegations of sexual or gender-based discrimination may do so by filing a challenge with the Title IX coordinator or the regional human resources director. The Title IX coordinator or the regional human resources director will promptly review the challenge and decide whether the challenged individual has a conflict, whether real or reasonably perceived, that prevents his or her continued involvement.

(06-01-17)

**P01.04.130. Retaliation Prohibited Against Complainant, Respondents, and Witnesses.**

A.     The university prohibits retaliation (including retaliatory harassment) against individuals who report sexual or gender-based discrimination, including sexual harassment or sexual assault, or who participate in the university's investigation and handling of such reports in any way, even if the university ultimately concludes that no sexual or gender-based discrimination occurred.

B.     Threats or other forms of intimidation or retaliation against complainants, respondents, witnesses or investigators will constitute a violation of this prohibition and may be subject to separate disciplinary proceedings.

C.     Retaliation or retaliatory harassment may be reported to the Title IX coordinator. If the alleged retaliation is caused by Title IX staff, the retaliation may alternately be reported to the regional human resources director.

(06-01-17)

**R01.04.010. Sex Discrimination and Sexual Misconduct.**

A.     Definitions

1.     "Appeal authority" is the individual, individuals, or office responsible for adjudicating any appeal from the findings of a Title IX investigator or the discipline imposed by the appropriate discipline authority.

2.     "Coercion" is the use of pressure to compel another person to engage in any sexual activity against that person's will. Coercion may include express or implied threats of physical, emotional, or other harm. Coercion invalidates consent.

3.     "Complainant" is the individual or individuals who have allegedly been the subject of conduct prohibited under this sex and gender-based discrimination policy, regardless of whether the individual or individuals file a complaint or otherwise seek disciplinary action.

4.     "Conflict of interest" exists when an individual investigating or adjudicating sex or gender-based discrimination has knowledge or personal or professional relationships with the complainant, respondent, or witnesses that would preclude, or could reasonably be perceived to preclude, the individual from being able to investigate or adjudicate the case fairly and impartially.

5.     "Consent" is the voluntary, informed, un-coerced agreement through words or actions freely given, that a reasonable person would interpret as a willingness to participate in mutually agreed-upon sexual acts. Consensual sexual activity happens when each partner willingly and affirmatively chooses to participate. A person who is incapacitated cannot consent.

6.      "Discipline authority" is the individual, individuals, or office responsible for determining and imposing discipline on the respondent. The discipline authority may vary between student respondents, university employee respondents, or third-party respondents.

7.     "Force" is the unwelcome use or threat (whether express or implied) of physical violence to compel another person to engage in any sexual activity against that person's will. Force invalidates consent.

8.     "Hostile environment" is when discrimination under this sex and gender-based discrimination policy is sufficiently serious (i.e., severe, pervasive, or persistent) and is both subjectively and objectively offensive so as to deny or limit a person's ability to participate in or benefit from the university's programs, or to interfere with a university employee's ability to perform the employee's job.

Case 1:20-cv-00001-SLG   Document 11-3   Filed 04/19/20   Page 9 of 23

9. "Incapacitation" is when individuals are in a state or condition in which they are unable to make sound decisions. This can be due to sleep, age, unconsciousness, alcohol, drug use, or mental and/or other disability. For example, someone who is unable to articulate what, how, when, where, and/or with whom the person desires a sexual act to take place is incapacitated.

10. "Interim measure" is an action taken by the university to preserve the complainant's and respondent's educational experience, to preserve the safety of all parties and the broader university community, to remedy discriminatory effects on the complainant and others, to maintain the integrity of the investigation and resolution process, or to deter retaliation.

11. "Living environment" is any place owned or controlled by the university where people are housed, recreate, or congregate.

12. "Preponderance of the evidence" means it is more likely than not that alleged conduct occurred.

13. "Respondent" is the individual or individuals who allegedly engaged in the conduct prohibited under this sex and gender-based discrimination policy.

14. "Sexual contact" includes contact with the breasts, buttock, groin, or genitals, or touching another with any of these body parts, or making another touch themselves with or on any of these body parts; or any other intentional bodily contact of a sexual nature. Sexual contact includes contact through clothing. Sexual contact does not include normal caretaker responsibilities.

15. "Sexual assault" includes non-consensual vaginal penetration by a penis, object, tongue, or finger; anal penetration by a penis, object, tongue, or finger; and oral copulation (mouth to genital contact or genital to mouth contact), no matter how slight the penetration or contact.

16. "Student" includes anyone for whom the university maintains an educational record and who is enrolled in a course offered by the university or who is an on approved national or international student exchange or study abroad program, internship, or other program of study. This definition of student shall not prohibit the university from seeking jurisdiction for any other purpose, including jurisdiction for discipline purposes.

17. "Third party" is any individual subject to this sex and gender-based discrimination policy who is not a university employee or a student.

18. "Title IX investigator" is a trained investigator who operates under the oversight of a Title IX coordinator.

19. "University employee" includes anyone hired and placed on the university payroll to perform work for pay for the university, including faculty, staff, and student employees.

B. **Prohibited Conduct**

The following are examples of prohibited sex or gender-based discrimination that serve as guidelines for acceptable and unacceptable behavior. They do not define prohibited conduct in exhaustive terms. Sex and gender-based discrimination can be committed by individuals of any gender, can occur between individuals of the same gender or different genders, can occur between individuals involved in intimate or sexual relationships, or can occur between strangers or acquaintances. Prohibited conduct

1. Sex or gender-based discrimination. In general, sex or gender-based discrimination refers to being adversely treated or affected, either intentionally or unintentionally, in a manner that unlawfully differentiates or makes distinctions on the basis of an individual's sex or gender. Examples of discrimination can include:

   a. Singling out or targeting an individual for different or adverse treatment because of that individual's sex or gender; or

   b. Unlawfully denying employment or participation by an individual in a university program or activity because of that individual's sex or gender; or

   c. Terminating or removing an individual from employment or an educational program because of that individual's sex or gender; or

2. Sex or gender-based harassment. This includes, but is not limited to, unwelcome sexual advances, requests for sexual favors, unwanted and repetitive messages of a sexual nature, unsolicited and unwelcome transmission of images of a lewd or sexual nature, or other verbal or physical conduct of a sexual nature where:

   a. submission to such conduct is made, either explicitly or implicitly, a term or condition of an individual's employment or education; or

   b. submission to or rejection of such conduct by an individual is used as the basis for retaliation, or for other employment or academic decisions affecting that individual; or

   c. the conduct creates a hostile environment.

3. Consensual sexual conduct that unreasonably interferes with other employees' work or other students' studies, or creates a hostile, intimidating, or offensive working, living, or learning environment.

4. Sexual assault. Examples of this are non-consensual vaginal penetration by a penis, object, tongue, or finger; non-consensual anal penetration by a penis, object, tongue, or finger; and non-consensual oral copulation (mouth to genital contact or genital to mouth contact), no matter how slight the penetration or contact.

5. Sexual exploitation. This occurs when a person takes non-consensual or abusive sexual advantage of another for the person's own advantage or benefit, or to benefit

or advantage anyone other than the one being exploited, including but not limited to:

    a.    invasion of sexual privacy, prostituting another person, non-consensual video or audio-taping of sexual activity, going beyond the boundaries of consent (such as secretly letting others watch consensual sex), engaging in voyeurism;

    b.    knowingly transmitting an STI or STD or HIV to another individual without his or her knowledge;

    c.    intentionally or recklessly exposing one's genitals for the purpose of sexual gratification;

    d.    inducing another to expose their genitals; or

    e.    sexually-based stalking and/or bullying.

6.    Non Consensual Sexual Contact. This is any intentional or reckless sexual contact perpetrated without consent.

7.    Complicity. This is any act taken with the purpose of aiding, facilitating, promoting, or encouraging an act of sex or gender-based discrimination.

8.    Retaliation.  Adverse action taken against a person participating in a sex or gender-based discrimination report or investigation because of that participation.

(06-29-17)

## R01.04.050. Support Resources for Those Reporting Sexual Misconduct.

A.    Confidential Resources

1.    The university offers the following confidential resources. Conversations with professionals at these resources are privileged, and information shared with them will not be disclosed without permission, unless there is an imminent threat of serious harm to the individual or to others, or other legal obligation to reveal such information (e.g., if there is suspected abuse or neglect of a minor).

UAA Confidential Resources:

**UAA Center for Advocacy, Relationships and Sexual Violence**
1-800-478-8999 Statewide (24/7)
907-276-7273 (24/7)
www.staralaska.com

**UAA Student Health and Counseling Center**
907-786-4040
uaa.alaska.edu/students/student-health-counseling-center

**UAA Psychological Services Center**
907-276-1795

UAF Confidential Resources:

**Interior Alaska Center for Non-Violent Living**
726 26th Avenue, Suite 1
Fairbanks, AK 99701
907-452-2293

**UAF Resource and Advocacy Center**
Wood Center room 130
907-474-6360
uaf.edu/oeo/advocacy-services/

**UAF Health and Counseling Center**
907-474-7043
http://www.uaf.edu/chc/

UAS Confidential Resources:

**Counseling and Health Services**
907-796-6000
http://www.uas.alaska.edu/juneau/counseling/

**Aiding Women in Abuse and Rape Emergencies (AWARE)**
1-800-478-1090
http://awareak.org/

2.  There are confidential resources throughout Alaska. Some can be found at www.alaska.edu/stopthesilence. Others include:

**Standing Together Against Rape (STAR) 24-hour Crisis Line**
1-800-478-8999 Statewide
907-276-7273
http://www.staralaska.com/

3.  These organizations may periodically report non-personally identifiable information about reports of sex and gender-based discrimination, including sexual harassment or sexual assault, to the Title IX coordinator to permit the Title IX coordinator to track patterns, evaluate the scope of any problems relating to sex and gender-based discrimination, and to formulate appropriate campus-wide responses.

4.      Conversations with one of the confidential resources identified above does not constitute a report or notice to the university.

(06-29-17)

**R01.04.060. Filing a Complaint or Report.**

A.      Limited Exceptions to  Reporting

1.      "Responsible employees" are not required to report sex or gender-based discrimination which is disclosed:

a.      During public awareness events focused on sex or gender-based discrimination (such as "Take Back the Night"); or

b.      By a subject, as a response to an Institutional Review Board-approved human subjects research protocol, such as a survey, focused on sex or gender-based discrimination, provided that the disclosed conduct did not occur during administration of the research protocol.

B.      Initiating a complaint

1.      Any student, university employee, or third party may report sex or gender-based discrimination, including sexual harassment or sexual assault. The Title IX coordinator has the right to pursue notice of sex or gender-based discrimination, including sexual harassment or sexual assault, on the Title IX coordinator's own behalf, regardless of whether or not a formal allegation is submitted by a complainant.

2.      Reports of sex or gender-based discrimination, including sexual harassment or sexual assault, can be submitted in the following ways to  a Title IX coordinator:

**UAA Title IX Coordinator**
3890 University Lake Drive, Suite 108, Anchorage, AK 99508
uaa_titleix@uaa.alaska.edu
907-786-4680
www.uaa.alaska.edu/about/equity-and-compliance/

**UAF Title IX Coordinator**
739 Columbia Cr., Fairbanks, AK 99775
uaf-tix@alaska.edu
907-474-7300
www.uaf.edu/titleix/

**UAS Title IX Coordinator**
11066 Auke Lake Way, Hendrickson Building 202, Juneau, AK 99801
uas_jytitle9@alaska.edu
907-796-6036
www.uas.alaska.edu/policies/titleix.html

Case 1:20-cv-00001-SLG   Document 11-3   Filed 04/19/20   Page 14 of 23

3. If the allegations relate to a respondent who is a member of the Title IX staff, they may be submitted to the appropriate regional human resources director:

**UAA Human Resources**
3211 Providence Drive
Anchorage, AK 99508
907-786-1800

**UAF Human Resources**
Admin Services Bldg
3295 College Rd.
Suite 108
Fairbanks, AK 99709
907-474-7700

**UAS Human Resources**
Hendrickson Building 202
11066 Auke Lake Way
Juneau, AK 99801
907-796-6273

4. Anonymous complaints or reports are permitted, but they may limit the Title IX staff's ability to investigate and respond to a complaint. Complainants may also request confidentiality, including that their name not be shared with the respondent, that the respondent not be notified of the report or complaint, or that no investigation occur. The university will consider such requests but cannot guarantee confidentiality. The university will weigh the request against the university's obligation to provide a safe, non-discriminatory environment for all members of the university, including the complainant. If the university concludes it can honor the request for confidentiality consistent with its obligations it will do so, but maintaining confidentiality may limit the university's ability to investigate and respond to the complaint. If the university concludes it cannot honor the request for confidentiality, it will inform the complainant before starting an investigation, and will make all reasonable efforts to maintain the complainant's privacy.

5. A student, university employee, or third party may pursue a complaint under this sex and gender-based discrimination policy simultaneously with a criminal complaint. The university may, however, temporarily suspend proceedings under this policy for an appropriate but brief period of time while a law enforcement agency is in the process of gathering evidence. In such cases, the university will promptly resume its Title IX proceedings as soon as notified by the law enforcement agency that it has completed the evidence-gathering process.

6. The Title IX staff will review the allegations and conduct a preliminary assessment to determine:

        a.      whether to dismiss the matter because insufficient information exists to support the allegations; or

        b.      whether sufficient information exists to warrant further review, including whether the allegations if substantiated constitute a violation of this sex and gender-based discrimination policy.

C.    Amnesty

    1.    The university strongly encourages students to report sex and gender-based discrimination, including sexual harassment or sexual assault. Consequently, the university will provide amnesty for conduct that would warrant minor sanctions under the student code of conduct, such as underage drinking or prohibited drug use that is related to misconduct reported under this sex and gender-based discrimination policy.

    2.    Students granted amnesty may still be required to complete educational programs, and abuse of amnesty requests can result in a decision by the student conduct administrator not to extend amnesty to the same person repeatedly.

(02-26-19)

**R01.04.070. Complaint is Filed: The University's Immediate Actions and Interim Measures.**

A.    Interim measures may include, but are not limited to:

    1.    Providing access to counseling services and assistance in arranging an initial appointment;

    2.    Providing access to confidential advocacy services and assistance in arranging an initial appointment;

    3.    Rescheduling of exams and assignments;

    4.    Changing class schedules;

    5.    Providing access to academic advising services;

    6.    Changing university work schedule or job assignment;

    7.    Changing campus housing;

    8.    Authorizing tuition, housing, or other fee refunds;

    9.    Providing access to medical services;

    10.   Imposing an on-campus "no contact order," an administrative remedy designed to stop contact and communications between two or more individuals;

11.     Fully or partially restricting the respondent's access to the university or university services or functions;

12.     Withholding conferral of a degree;

13.     Making transportation arrangements; and

14.     Providing any other measure that can be used to achieve the goals of this sex and gender-based discrimination policy.

B.      Interim measures can be changed at any time.  Parties requesting a change to an interim measure can request it from the Title IX coordinator at any time.  Title IX staff will also inform the complainant and respondent in writing of the availability of reasonable and appropriate interim measures. Interim measures affecting the respondent may be restrictive but not punitive and will reflect the relevant circumstances.

C.      If the complainant alleges, or the Title IX staff otherwise becomes aware of, sex or gender-based discrimination, including sexual harassment or sexual assault, that affects individuals who are placed at entities outside the university, such as part of internships, clinical programs, or otherwise, the Title IX staff will work with that entity to provide appropriate remedies and to ensure that the entity takes no further action prohibited under this sex and gender-based discrimination policy or otherwise prohibited by Title IX. The university will not facilitate, require, permit, or consider maintaining such placement if the appropriate remedies are not provided or the Title IX staff, in consultation with that entity, is unable to ensure that no further action prohibited under this sex and gender-based discrimination policy occurs.

(06-29-17)

## R01.04.080. Informal Resolution of the Complaint.

A.      An informal resolution will typically be completed within 20 calendar days of receipt of the complaint.  If it becomes necessary to extend the process, both parties will be notified of a revised expected resolution timeframe.

B.      If at any point during the informal process, the complainant, the respondent, or the Title IX staff wishes to cease the informal process and to proceed through formal procedures, the formal process outlined below will be invoked. At no point in the informal process will the complainant be required to resolve the problem directly with the respondent.

C.	The informal resolution must adequately address the concerns of the complainant, as well as the rights of the respondent and the overall intent of the university to stop, remedy, and prevent sex and gender-based discrimination, including sexual harassment or sexual assault. (Informal actions might include, but are not limited to: providing training to a work unit; having a discussion with an individual whose conduct, if not stopped, could rise to the level of discrimination or create a hostile environment; or having a conversation with a supervisor or faculty member).

(06-29-17)

## R01.04.090.  Formal Resolution of the Complaint: Investigation.

A.	Investigation

1.	Investigations will be conducted by a Title IX investigator. Both the complainant and respondent will have an opportunity to identify witnesses for the investigator to interview, and to present directly to the investigator their accounts of the events in an interview with the investigator. Before the respondent is interviewed, the Title IX coordinator will provide the respondent notice of the allegations. The complainant and respondent will also have an opportunity to provide any evidence or other information relevant to the investigation. Investigations involving employees represented by unions will also comply with union collective bargaining agreements.

2.	Neither the complainant nor the respondent is required to participate in the investigation, though the Title IX investigator will complete the investigation in light of the information available. Both parties will have an opportunity to review and respond to evidence considered, and will receive an equal opportunity to provide feedback to the investigator prior to the report being completed.

3.	The investigator will determine the relevance of any information.  Neither state nor federal rules of evidence apply in the investigation or any related proceeding, including appeals.

4.	In general, the investigator will not consider statements of personal opinion or statements as to any party's general reputation. The university does not permit questioning or consider evidence of other sexual behavior of the respondent or complainant if the danger of unfair prejudice, confusion of the issues, or unwarranted invasion of the privacy of any party outweighs its probative value.

5.	The complainant and respondent will be interviewed separately. The complainant has the right not to confront or be confronted by the respondent during the investigation and complaint resolution process, including appeals. The parties are not permitted to cross-examine each other, but each party may submit questions in writing to the investigator to be asked of the other party. The Title IX staff will review all submitted questions before they are asked to ensure that they are relevant to the investigation and are not used to harass or intimidate the other party.

Case 1:20-cv-00001-SLG   Document 11-3   Filed 04/19/20   Page 18 of 23

6. The complainant and the respondent may select an advocate for assistance during the proceedings, including the investigation and any appeal. Should either party choose an attorney for an advocate, that party is responsible for the attorney's fees and legal costs regardless of the outcome of the proceeding. Additionally, the university is entitled to restrict the advocate's ability to speak or otherwise participate during the proceedings, but any such restriction must be applied equally to the advocates of both parties.

7. If the respondent is a bargaining unit employee, the employee has a right to union representation during any investigatory interview with the employee. If a union representative is present for the investigation of a bargaining unit employee, the union representative will also receive a copy of the written findings of the investigation.

8. Findings shall be made using the preponderance of the evidence standard.

B. Notification to Complainants and Respondents; Case Records

1. The Title IX staff will provide regular updates to the complainant and respondent regarding the status of the investigation. The Title IX staff will also provide the parties with similar and timely access to information or evidence that the investigators will consider.

2. The Title IX staff will prepare a case file with documentation of all activities and proceedings, including but not limited to the allegations to be investigated, interview notes, witness statements, and other documents, the interim measures offered to and used by a complainant, the beginning and end dates of the investigation, the beginning and end dates of any suspension of an investigation for purposes of allowing a law enforcement agency to gather evidence, and an explanation if an investigation has been suspended or closed before completion.

3. When the final investigative report is complete, the Title IX coordinator will provide simultaneous written notification to all parties of the outcome of the investigation. The Title IX coordinator will forward the findings, investigative report and case file, if there are any findings of responsibility, to the appropriate discipline authority.

C. Investigative Timeline

1. Within approximately 50 calendar days from the date the complaint was filed, the final investigative report will be completed and the Title IX coordinator will notify the parties of the outcome of the investigation and forward any findings of responsibility along with the investigative report and relevant documentation to the appropriate discipline authority.

Case 1:20-cv-00001-SLG   Document 11-3   Filed 04/19/20   Page 19 of 23

2.    Any timeline associated with the formal resolution process, including appeals, may be extended for good cause. Good cause may exist for a variety of factors, including the complexity of the circumstances of each allegation, the availability of individuals and evidence relevant to the investigation, to comply with a request by law enforcement, school breaks, or to address other legitimate reasons. The Title IX staff may extend a deadline for good cause; alternatively, the complainant or respondent may request an extension with a showing of good cause.

3.    If the investigation is extended for good cause, the Title IX coordinator will notify both parties of the delay and its anticipated duration.

(06-29-17)

## R01.04.100. Formal Resolution of the Complaint: Appealing Investigative Findings.

A.    A complainant or respondent wishing to appeal a finding of responsibility will have the opportunity to do so pursuant to R01.04.110.

B.    A complainant or respondent wishing to appeal a finding of no responsibility must notify the Title IX coordinator within 5 calendar days of receiving notice of the outcome of the investigation. If an appeal is received, the Title IX coordinator will request that any discipline proceedings be paused until the appeal is resolved. The time for an appeal shall not count as part of the 60-day investigation and discipline timeline.

C.    An appeal must be made in writing and identify the finding being appealed and the ground for appeal. The notice of appeal must be submitted with whatever documentation the appealing party believes supports the appeal. The only acceptable grounds for appeal are:

1.    a procedural error was made during the process that significantly impacted the finding being appealed; or

2.    the finding being appealed was arbitrary and capricious. A finding is arbitrary and capricious when it has no reasonable basis in fact; or

3.    there is new information that was not available at the time of the finding being appealed or sanction imposed and that, if introduced and credible would have significantly impacted the finding. Any party's unwillingness to provide a statement or participate in the student conduct process will not satisfy this ground for appeal. An investigator's improper refusal to consider evidence on relevancy grounds can satisfy this ground for appeal.

The appeal authority will be a Title IX coordinator for one of the three separately accredited universities within the university system — UAA, UAF, and UAS — other than the Title IX coordinator that was responsible for the investigation. The appeal authority will first consider whether one of the acceptable grounds for appeal in this subsection is sufficiently

Case 1:20-cv-00001-SLG   Document 11-3   Filed 04/19/20   Page 20 of 23

supported. If it is not, the appeal authority will uphold the factual findings pursuant to subsection J.1., below.

D.    Within 5 calendar days of receiving a notice of appeal, the Title IX staff will inform the non-appealing party of the appeal and will send the non-appealing party the notice of appeal and any documentation submitted with the notice of appeal.

E.    Within 5 calendar days of receiving the notice of appeal and the documentation submitted with the notice of appeal, the non-appealing party may submit written comments regarding the appeal and any supporting documentation to the Title IX coordinator.

F.    Within 5 calendar days of receiving the non-appealing party's written comments and supporting documentation, or within 5 calendar days of the deadline for the non-appealing party to do so, whichever comes first, the Title IX coordinator will forward the notice of appeal, the non-appealing party's comments, any supporting documentation submitted by the parties, and the case file to the appropriate appeal authority.

G.    The appeal authority is authorized to resolve the appeal by reviewing only the notice of appeal, the non-appealing party's comments, supporting documentation submitted by the parties, and the case file.

H.    The appeal authority is authorized, but is not required, to take new evidence if it determines that doing so is necessary to resolve the appeal.

I.    The appeal authority will issue a written decision. In its decision, the appeal authority is authorized to:

      1.    uphold factual findings;

      2.    alter or modify a factual finding;

      3.    make new factual findings;

      4.    refer the matter back to the Title IX investigator for further review.

J.    The appeal authority will issue its written decision within 7 calendar days of receiving the notice of appeal, subject to extensions for good cause. Unless the matter is referred to further discipline proceedings, the decision of the appeal authority constitutes the university's final decision on the matter. Notification to the affected students must be made in writing and in accordance with Regents' Policy and University Regulation. (06-29-17)

**R01.04.110. Formal Resolution of the Complaint: Discipline and Remedies.**

A.      Discipline and Sanctions

1.      Appropriate discipline or sanctions for a respondent found to have engaged in sex or gender-based discrimination will be determined by the following discipline authorities:

   a.      For student respondents, discipline is imposed or recommended by the dean of students office as defined in University Regulation 09.02.040. Discipline may include one or more minor sanctions or major sanctions, including suspension, expulsion, or revocation of degree.

   b.      For employee respondents, discipline is imposed by the regional human resources office according to Regents' Policy 04.07 and 04.08 and applicable collective bargaining agreements and may include, but is not limited to, verbal and written reprimands, probation, suspension or termination. Where the respondent is a university employee, the Title IX coordinator will provide the findings of responsibility along with the investigative report and relevant documentation to the regional human resource director for processing.

   c.      For third-party respondents, sanctions are imposed by the Title IX coordinator in conjunction with campus leadership, and may include up to temporary or permanent bans from university property and activities. Where the respondent is a third party, the Title IX coordinator will provide the findings of responsibility along with the investigative report and relevant documentation to the appropriate member of campus leadership for processing.

   d.      For respondents that are both students and university employees, all applicable discipline procedures may be used. For example, the findings of responsibility along with the investigative report and relevant documentation will be forwarded to both the regional human resource director and the dean of students office in regards to a graduate student who is also a teaching assistant.

2.      To determine the appropriate sanction, the discipline authority will offer both parties an opportunity to meet with the discipline authority; consider a student's or employee's present and past disciplinary record; the nature of the offense; the severity of any damage, injury, or harm resulting from the prohibited behavior; and any other relevant factors.

3.      The discipline authority will make its discipline decision or recommendation within 10 calendar days of receiving findings of responsibility along with the investigative report and relevant documentation from the Title IX coordinator, and within 60 calendar days of a complaint being filed, subject to any pause in the proceedings to

permit an appeal of the findings. The discipline authority will inform the parties simultaneously of its discipline decision.

4. Complainants will be provided an equal opportunity to participate in the student discipline process, including being afforded all notice, participation, and appeal rights held by the respondent. The university will also strive to provide complainants an equal opportunity to participate in the employee discipline process, as allowed by law and collective bargaining agreements.

5. Bargaining unit employees who have been disciplined pursuant to this sex and gender-discrimination policy must resolve any dispute regarding the discipline through the dispute resolution processes provided in their collective bargaining agreement.

B. Remedies

1. When a respondent is found to have engaged in sex or gender-based discrimination, the university will take prompt and effective steps to end any misconduct, eliminate any hostile educational, living, or work environment, prevent recurrence of the misconduct, support complainant, and remedy the discriminatory effects on the complainant and others.

2. Remedial efforts may include, but are not limited to, making permanent any interim measures imposed, or otherwise taking any action identified in the regulations governing interim measures.

3. Remedial efforts may also include providing broad-based or targeted remedies for the community, such as additional training, climate assessments, revisions to policy or practices, or any other action tailored to the facts and circumstances that may eliminate, prevent, or address the effects of a hostile environment.

(06-29-17)