Michael E. O'Brien
Alaska Bar No. 0311084
MOBrien@perkinscoie.com
PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
Telephone: 907.279.8561
Facsimile: 907.276.3108

Attorney for Defendants
THE UNIVERSITY OF ALASKA, SARA
CHILDRESS IN HER INDIVIDUAL AND
SUPERVISORY CAPACITY, CHASE
PARKEY IN HIS INDIVIDUAL AND
SUPERVISORY CAPACITY, SEAN
MCCARTHY, JON TILLINGHAST

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DANIEL MACDONALD,<br><br>       Plaintiff,<br><br>  v.<br><br>THE UNIVERSITY OF ALASKA, SARA CHILDRESS IN HER INDIVIDUAL AND SUPERVISORY CAPACITY, CHASE PARKEY IN HIS INDIVIDUAL AND SUPERVISORY CAPACITY, SEAN MCCARTHY, JON TILLINGHAST, AND JOHN DOES 1-25,<br><br>       Defendant. | Case No. 1:20-cv-00001-SLG |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 1 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Plaintiff Daniel MacDonald ("MacDonald") moves for a temporary restraining order and preliminary injunction asking this Court to grant him the extraordinary relief of ordering the University of Alaska and the defendants listed above ("University") to stop an investigation into allegations that he engaged in sexual harassment of and non-consensual sexual contact with female students. He asks the University to leave those students' claims unanswered and to allow him to complete his studies without determining whether any misconduct occurred.

MacDonald's request violates the *Younger* abstention doctrine and must be dismissed as a result. His due process claims range from meritless to frivolous, his alleged harms are either speculative or reparable, the balance of interests weighs sharply against him, and his claims oppose the public's interest. As a result, his request for a temporary restraining order and preliminary injunction should be denied.

## I.    FACTS

MacDonald is an enrolled student at the University of Alaska, Southeast ("UAS"). He had been employed by UAS as a Resident Advisor ("RA") in John Pugh Hall and Banfield Hall.

On October 21, 2019, Chase Parkey ("Parkey"), received an email from a UAS

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 2 of 37
148074111.6

Case 1:20-cv-00001-SLG    Document 15    Filed 05/05/20    Page 2 of 37

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Staff member, Sean McCarthy ("McCarthy"), stating that during a meeting with C.M.,[1] another RA in Banfield Hall, on or about October 18, 2019, it was alleged, among other things, that MacDonald may be a "potential predator within the freshman hall." C.M. told McCarthy that on several occasions MacDonald would refer to the freshmen girls as "'sluts that would fuck anything' and would brag about how they all wanted to sleep with him."[2] C.M. went on to tell McCarthy that MacDonald had liked her, and when MacDonald would make advances toward her she would state she was not interested. C.M. also stated that she told MacDonald she was aware of the situation with another RA at John Pugh Hall identified as D.P. who alleged that MacDonald had made inappropriate sexual comments to her as well. C.M. alleged that MacDonald immediately started dating a freshman girl after C.M. denied his advances and asserted her belief in D.P.'s statements.[3]

On Saturday, October 19, 2019, McCarthy spoke with another RA, K.G., who was friends with both MacDonald and C.M. K.G. told McCarthy that MacDonald was "harassing" C.M. and that C.M. is "very trusting and didn't really understand what all

---

[1] Plaintiff uses pseudonyms for the two complainants and two of the witnesses in their Motion (Docket 11 at 6). Rather than utilize pseudonyms, the Defendants have chosen to use initials to protect the identity of those witnesses and avoid making a misinterpretation of who Able, Baker, Cable, and Davis actually represent.

[2] *See* Declaration of Sara Childress, Title IX Coordinator at ¶ 2.

[3] *Id.*

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 3 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

was happening in the situation or that [MacDonald] liked her."[4] MacDonald reports that C.M. is autistic, although the University cannot verify that fact.[5] K.G. reported that she was told by C.M. that MacDonald would grab C.M.'s butt, try to kiss her and make remarks about wanting to be in a relationship with her. K.G. also stated that when C.M. invited MacDonald over, he would try to stay the night and sometimes succeed by saying things like "friends stay the night and often sleep in the same bed."[6] It should be noted, that K.G. did not want to make a report, but McCarthy is a "responsible employee," or mandatory reporter under federal law, and therefore made the report to the Title IX office.

On October 21, 2019, the same day investigator Parkey received the email from McCarthy alleging potential sexual harassment, unwanted sexual comments, and predatory behavior, Parkey reached out to the first alleged victim, C.M., with reporting and counseling resources and requested to speak with her.[7] C.M. responded to Parkey on October 28, 2019 and met with him that day.[8] A week later, on November 4, 2019, Parkey met again with C.M. and she agreed to move forward with a formal

---

[4] *Id.*
[5] Docket 11-5 at 4.
[6] Childress Decl. at ¶ 3.
[7] *Id.* at ¶ 4.
[8] *Id.* at ¶ 5.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 4 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

investigation. [9] Between October 28 and November 4, 2019, C.M. moved out of Banfield Hall where she and MacDonald had both been RAs.

On November 4, 2019, the University determined that it had jurisdiction and promptly commenced its own internal investigation. [10] Universities that are recipients of federal funds are required by Title IX of the Education Amendments of 1972 to have in place a process for addressing Title IX on campus. [11] Unlike the state criminal process, the University proceedings are civil in nature, allowing it to impose sanctions where a preponderance of the evidence supports the conclusion that a student committed sexual harassment or non-consensual sexual contact. [12]

On November 11, 2019 Title IX Coordinator Sara Childress emailed the November 8, 2019 Notice of Investigation ("NOI") to both MacDonald and the complainants (C.M. and D.P. [13]) alleging:

1. Sexual Harassment - Multiple incidents of sexual harassment towards UAS students have been alleged, beginning in the Fall 2018 semester and continuing into the Fall 2019 semester; and
2. Non-Consensual Sexual Contact - There has been allegations of non-consensual sexual contact with a UAS student in the Fall 2019 semester. [14]

---

[9] *Id.* at ¶ 6.
[10] *Id.*
[11] 20 U.S.C. § 1681(a).
[12] R.01.04.010.A.8. *See* Docket 11-3 at 9.
[13] Childress Decl. at ¶ 7.
[14] Docket 11-4 at 2.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 5 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Pending the outcome of its investigation, the only restrictions the University placed on MacDonald was that he was to avoid contact with D.P.[15]

Immediately following the transmittal of the NOI on November 11, 2019, MacDonald responded to Parkey's office unannounced, asking to speak with him. Parkey agreed to make himself available and met with MacDonald.[16] During the meeting, MacDonald admitted to making sexually harassing comments to D.P., but denied unwanted sexual contact with C.M.[17] On the same date, November 11, 2019, Parkey reached out to the complainants separately requesting an interview.[18] The following is a timeline of the investigation proceedings between November 13, 2019 until March 2020[19]:

| Date | Event |
|------|-------|
| 11/13/2019 | Interview of C.M. |
| 11/14/2019 | Interview of D.P. |
| 11/14/2019 | Emails to McCarthy and K.G. requesting interviews |
| 11/14/2019 | Interview of McCarthy |
| 11/14/2019 | Interview of K.G. |
| 11/14/2019 | Emails to additional witnesses (4) requesting interviews |
| 11/15/2019 | Witness interview conducted |

---

[15] Docket 11-4 at 3. *See also* Childress Decl. at ¶ 8.
[16] Childress Decl. at ¶ 9.
[17] *Id.*
[18] *Id.*
[19] Childress Decl. at ¶ 10.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 6 of 37

148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

| Date | Event |
|---|---|
| 11/15/2019 | Email to MacDonald regarding request to arrange time to speak about investigation. |
| 11/17/2019 | MacDonald responded to Parkey's request to speak and informed Parkey he would be utilizing an attorney, Joseph Lento, as his advisor in the investigation process. |
| 11/18/2019 | Parkey informed MacDonald he would need a FERPA release to speak with Lento. |
| 11/18/2019 | Signed FERPA release received. |
| 11/18/2019 | Email from MacDonald (cc to Lento) requesting specific information regarding the investigation. |
| 11/19/2019 | Two witness interviews conducted. |
| 11/20/2019 | Witness interview conducted. |
| 11/21/2019 | Email from MacDonald and Lento requesting availability for an interview the week of December 9. Parkey responded with his availability for that week. |
| 11/21/2019 | Parkey notifies complainants and respondent he will be out of the office from 11/25 - 12/6/19. Parkey informed complainants and respondent to contact Childress if there is any issue while he is away. |
| 11/22/2019 | MacDonald and Lento request to meet for interview on December 13, 2019 at 8 a.m. The date/time was accepted by Parkey. |
| 11/25/2019 to 12/06/2019 | Parkey out of office |
| 12/04/2019 | Parkey receives an email from UAS Faculty Erica Hill regarding a conversation she had with her student, MacDonald, about his request for a letter for graduate school. |
| 12/09/2019 | K.G. contacts Parkey requesting to meet with him because she had learned additional information that she wanted to provide. |
| 12/09/2019 | Parkey emails complainants and respondent to notify them he was back in the office and available if they required any further assistance while the investigation continues. |

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 7 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

| Date | Event |
|------|-------|
| 12/09/2019 | C.M. emails Parkey requesting to meet on December 11th. |
| 12/11/2019 | Email from MacDonald and Lento received requesting information on how the complaint was received. Parkey advised the complaint was received by a "responsible employee of the University." |
| 12/11/2019 | Parkey interviewed C.M. about additional details that came out of speaking with witnesses. |
| 12/11/2019 | Parkey emailed D.P. requesting to meet. |
| 12/11/2019 | Parkey emails an additional 3 witnesses requesting times to meet. |
| 12/12/2019 | Parkey interviewed MacDonald (Advocate Lento present via Zoom). |
| 12/12/2019 | Parkey interviewed witness A.M. |
| 12/12/2019 | Parkey interviewed witness I.B. |
| 12/13/2019 | Parkey interviewed witness S.C. |
| 12/13/2019 | Parkey interviewed D.P. |
| 12/19/2019 | Parkey email to complainants and respondent regarding winter break closure from December 21, 2019 - January 6, 2020. |
| 12/19/2019 | Parkey email to complainants and respondent that he would be out of office from January 5-11, 2020. |
| 12/21/2019 - 01/06/2020 | University closure - winter break |
| 01/05/2020 - 01/11/2020 | Investigator Parkey out of office |
| 01/20/2020 | Parkey received an email from MacDonald stating he felt like K.G. was retaliating against him. He mentioned the basis of this being a comment she made about killing him, which he had previously disclosed in his interview. |
| 01/20/2020 | Parkey responds to MacDonald's email regarding K.G. requesting clarification as well as letting him know the evidence review process would take place soon. |

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 8 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

| Date | Event |
|------|-------|
| 01/21/2020 | Parkey email to Lento (MacDonald's Advocate) with non-disclosure agreement regarding the evidence review. |
| 01/22/2020 | Parkey received a signed non-disclosure agreement from Lento on behalf of MacDonald. |
| 01/22/2020 | Parkey emailed complainants and respondent with instructions on how to complete the evidence review process along with a link to all evidence obtained during the investigation. The email included the evidence review guidelines and the individual evidence review packets. |
| 01/22/2020 | Parkey received an email from MacDonald of ten screenshot images of text messages between MacDonald and C.M. MacDonald claimed he was feeling retaliated against in this email, so Parkey opened a new case. |
| 01/23/2020 | Parkey received an email from D.P. that she reviewed the evidence and had no comments, changes, or additions. |
| 01/27/2020 | Parkey received email from MacDonald and Advocate Lento in response to the evidence review. |
| 02/07/2020 | Investigator Parkey decides to move family out of Alaska, tenders resignation. |
| 03/30/2020 | Jon Tillinghast hired |

One of the thrusts of MacDonald's claims is that the investigation took too long. However, it is clear from the above timeline that Parkey requested an interview with MacDonald on November 15, 2019, four days after the investigation commenced. MacDonald did not respond to the that email for two days, or until November 17, 2019. In the November 17, 2019 email, MacDonald stated he would be represented by counsel. In order to interact with counsel, Parkey needed a FERPA release from

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 9 of 37
148074111.6

Case 1:20-cv-00001-SLG   Document 15   Filed 05/05/20   Page 9 of 37

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

MacDonald. MacDonald returned a signed release on November 21, 2019 and asked for an interview three weeks later, the week of December 9th. Parkey accommodated that request for a delay and scheduled an interview for December 12th. In the end, MacDonald's requested delay pushed the investigation out almost a full 30 days. The above timeline and Declaration of Sara Childress demonstrates that Parkey actively pursued the investigation during this requested delay, but interviews that necessarily arose from facts brought forward by MacDonald's interview continued for another week. The University was closed from December 21, 2019 until January 6, 2020, and Parkey was not available until January 11, 2020 due to the University closure and professional training. As the above timeline makes clear, Parkey actively pursued completion of the investigation through the evidence review stage.

After the evidence reviews and any responses to those reviews, the next step in the investigation would normally be report writing. However, because of MacDonald's January 27, 2020 allegations that he felt that he had been treated unfairly[20], combined with the fact that on February 7, 2020 Parkey provided notice that he intended to resign[21], the University took the allegations by MacDonald under advisement and ultimately decided on March 30, 2020 to refer the investigation to an outside

---

[20] Docket 11-5 at 5-8.
[21] Ex. A (Parkey's resignation).

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 10 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

investigator, Attorney Jon Tillinghast.

Prior to a conclusion and subsequent resolution of the University's ongoing investigation, MacDonald sued the University, three University employees, and a contract investigator—Sara Childress, Title IX Coordinator, Chase Parkey, Title IX Investigator, Sean McCarthy, UAS Staff Member, and Jon Tillinghast, Investigator

MacDonald now moves for injunctive relief, asking the Court to enjoin the University from completing its investigation into allegations that he engaged in sexual harassment and non-consensual sexual contact with female students and allow MacDonald to remain in the educational environment and complete his studies without determining whether the conduct occurred while the case is litigated. His arguments for injunctive relief fail the test enunciated under *Winter v. Natural Resources Defense Council, Inc.*,[22] and this court should deny his request.

## II. ARGUMENT

### A. MacDonald's Request is Barred by the *Younger* Abstention Doctrine

MacDonald's request for a temporary restraining order or preliminary injunction violates the *Younger* abstention doctrine.[23] Under *Younger*, a plaintiff may not ask the federal courts enjoin a state agency's civil proceeding that "(1) is ongoing, (2)

---

[22] 555 U.S. 7, 20 (2008).
[23] *Younger v. Harris*, 401 U.S. 37 (1971).

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 11 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

constitutes a quasi-criminal enforcement action, (3) implicates an important state interest, and (4) allows litigants to raise a federal challenge."[24] Here, the University is a constitutionally-created state agency of the State of Alaska[25] and is engaging in an ongoing quasi-criminal enforcement action of its campus sexual harassment regulations, an important state interest. Accordingly, *Younger* abstention applies.

The U.S. Supreme Court has held that a state's civil actions, conducted to police its interests qualify as "quasi-criminal enforcement":

> civil enforcement proceedings initiated by the state to sanction the federal plaintiff ... for some wrongful act, including investigations often culminating in the filing of a formal complaint or charges, meet the 'quasi-criminal enforcement' requirement.[26]

A Title IX investigation meets this standard. The Sixth Circuit already analyzed this issue in *Doe v. University of Kentucky* and found that the *Younger* abstention doctrine prohibits a student from attaining an injunction to stop a public university's Title IX

---

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

[24] *Citizens for Free Speech, LLC, v. County of Alameda*, 953 F.3d 655, 657 (9th Cir. 2020) (citing *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014)).
[25] *State of Alaska v. Chevron Chemical Co*., 669 F.2d at 1299, 1301-02 (9th Cir. 1982).
[26] *Citizens for Free Speech, LLC*, 953 F.3d at 657, citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79–80 (2013).

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 12 of 37
148074111.6

investigation and sanctions process.[27] The *Doe v. University of Kentucky* holding speaks directly to the facts of this case:

> A state actor, the public University, is a party to the proceeding and initiated the action. Additionally, the case against Doe involved a filed complaint, an investigation, notice of the charge, and the opportunity to introduce witnesses and evidence. Although the proceeding lacks some of the due process protections for a criminal trial, such as having an attorney cross-examine witnesses and being able to subpoena witnesses, that does not destroy the applicability of *Younger* abstention. Doe focuses on the fact that an attorney cannot cross-examine witnesses as a key reason why abstention should not apply, but cross-examination is permitted. Doe could submit questions to a hearing officer who would present them to the witness, and counsel can be present. And we have previously stated that school disciplinary proceedings, while requiring some level of due process, need not reach the same level of protection that would be present in a criminal prosecution. Thus, while the proceeding may lack all the formalities found in a trial, it contains enough protections and similarities to qualify as "akin to criminal prosecutions" for purposes of *Younger* abstention.

Here, the University is engaging in an ongoing Title IX enforcement action against MacDonald that may result in a formal complaint against him. Accordingly, the University's Title IX enforcement action qualifies as a "quasi-criminal enforcement action" under *Younger*.

---

[27] 860 F.3d 365, 371 (2017) (holding "the district court was correct in finding *Younger* abstention precluded its involvement in the case.").

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 13 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

The University's Board of Regents' Policy and University Regulations afford MacDonald an opportunity to raise the very issues he brings in his request for temporary restraining order and preliminary injunction: he complained about Parkey's bias, and Parkey was replaced; he can suggest witnesses to be interviewed and to present evidence; he has the right to have counsel assist him; he has full appeal rights. MacDonald has already raised the due process issues present in this request for a temporary restraining order and preliminary injunction and the University has worked in good faith[28] to accommodate him.[29]

Preventing sexual harassment and sexual assault on the University's campuses is an important state interest, as the University's Board of Regents has affirmed in Policy:

> The Board of Regents of the University of Alaska System affirms its commitment to a safe and healthy educational and work environment in which educational programs and activities are free of discrimination on the basis of sex. The board further affirms its commitment to respond appropriately to sexual harassment and sexual violence, in accordance with applicable law as amended from time to time, including Title IX of the Education Amendments of 1972, the Violence Against Women Reauthorization Act, Title VII of the Civil Rights Act of 1964 (which prohibits

---

[28] The Plaintiff has not raised any of "bad faith" arguments (*e.g.*, bad faith, harassment, flagrant unconstitutionality) that are exceptions to *Younger*. *See* 860 F.3d 365, 371 (citing Fieger *v. Thomas*, 74 F.3d 740, 750 (6th Cir. 1996)).

[29] R.01.04.100. *See* Docket 11-3 at 7; Childress Decl. at ¶¶ 10, 12.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 14 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

discrimination on the basis of sex in employment), Alaska Statute 18.80, and due process of law.[30]

Accordingly, MacDonald's attempt to have the federal courts enjoin a state agency's enforcement of an important state interest violates the *Younger* abstention doctrine and must be dismissed.

### B.  MacDonald's Due Process Arguments Fail the *Winter* Test

As this court stated in its April 21, 2020 Order, the standard for obtaining a temporary restraining order is the same as that for a preliminary injunction. In *Winter*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest."[31] Irreparable harm must be likely, not just possible, for an injunction to issue.[32] Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that its "serious questions" approach to preliminary injunctions was still valid, but only "when applied as a part of the four-element *Winter*

---

[30] P.01.04.000 (Preamble). *See* Docket 11-3 at 2.
[31] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter,* 555 U.S. at 20).
[32] *See Winter*, 555 U.S. at 25; *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 15 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

test."[33] Accordingly, if the "balance of hardships tips *sharply* in the plaintiff's favor" then a plaintiff must only show "that there are "serious questions going to the merits."[34] In the instant case, the balance of the hardships tips sharply in the University's favor, meaning that MacDonald must meet the higher "likely to succeed on the merits" standard.

### C. The Court Should Apply the "Likelihood of Success on the Merits" Standard

The "balance of the equities" tilt in the University's favor. The "balance of the equities" means that the preliminary injunction "does more good than harm."[35] An injunction will permanently prohibit to the University's ability to fairly investigate this matter, making it irreparable[36]; by contrast, the harms McDonald alleges are reparable and speculative. The Ninth Circuit has held that where the potential damage to one party is limited and reparable and the damage to the other party is substantial and irreparable, the "balance of the hardships tilts" in favor of the latter party.[37]

The University will suffer tremendous and permanent harm if the court grants

---

[33] *See All. for the Wild Rockies*, 632 F.3d at 1131–35.

[34] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[35] *All. for the Wild Rockies*, 632 F.3d at 1133, citing *Hoosier Energy Rural Elec. Co-op., Inc., v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009).

[36] *All. for the Wild Rockies v. Cottrell*, 632 F.3d at 1135.

[37] *Benda v. Grand Lodge of Intern. Ass'n of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978).

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 16 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

MacDonald's injunctive relief. While MacDonald vacillates between wanting the investigation to occur quickly and not wanting it to happen at all, for the female students that he harassed, justice delayed is justice denied. They are planning for the upcoming semester and will want to register for classes and housing knowing that they will be safe on campus. Other students on campus have an interest in knowing that when they make a complaint, the University will act on it and address it expediently. MacDonald has already admitted some of the alleged conduct and delaying consequences for that behavior dilutes the impact any sort of corrective action. The University is a constitutionally created corporation with the legal authority to regulate and police its campuses.[38] Halting the investigation nurtures a misperception that the University is unable to police its campus, enforce its rules, and keep its students safe.

By contrast, if the investigation goes forward, MacDonald will continue his studies with no impediments to his studies or access to campus life. The sole restriction on his conduct is that he cannot speak to D.P.

Like all investigations, delay leads to stale facts, faded memories, and other problems unique to the educational environment, such as witnesses becoming unavailable due to summer break and graduation. The University lacks subpoena power, so when students graduate or move away for the semester or summer it becomes

---

[38] *Chevron Chemical Co.*, 669 F.2d at 1301.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 17 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

tremendously difficult to interview them or to bring them back for hearings. Faded memories and missing witnesses cannot be reconstituted, and the damage to the University's investigation will be permanent, even if subsequent litigation someday allows the investigation to resume. If the investigation continues, MacDonald, by contrast, will have the opportunity to appeal any problem he perceives in the University's investigation, and will be able to rely on a full record of recorded, transcribed interviews.

MacDonald conjures several due process issues in his motion for a temporary restraining order and preliminary injunction. While those claims are meritless, further delay in this investigation may ultimately result in *real* due process concerns for him. Like the University, he will also experience more difficulty presenting evidence and witnesses as this matter extends beyond this semester. Accordingly, it is also in MacDonald's interests to allow the university to complete its investigation, as his ability to present his case may be hobbled otherwise. Because the balance of equities tips in the University's favor, MacDonald must meet the "likelihood of success on the merits" standard and not the "serious questions going to the merits" standard allowed in more compelling cases.[39]

---

[39] *All. for the Wild Rockies*, 632 F.3d at 1133.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 18 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

### 1. MacDonald's Allegations of Due Process Violations Are Meritless and Neither Raise Serious Questions nor Have any Likelihood of Success on the Merits

The essence of MacDonald's first due process argument against the University is that the investigation against him was tainted by the original investigator, cannot be remedied by a new investigator, and must be stopped. This is akin to a person who kills his parents begging the court for leniency because he is an orphan.

In fact, the University replaced the investigator in MacDonald's case because he requested a new investigator.[40] On January 27, 2020, he and his counsel alleged that MacDonald was not being treated fairly.[41] At roughly the same time MacDonald made this allegation, the assigned investigator, Parkey, decided to leave Alaska and move with his family out of state.[42] While the University did not and does not agree that Parkey was being unfair, it considered MacDonald's displeasure with Parkey along with the fact that Parkey was not going to be able to finish the investigation. Taking those facts together, the University decided to replace Parkey with a seasoned attorney with over 30 years of experience in matters such as this one—Jon Tillinghast.

---

[40] Docket 11-5 at 8.

[41] *Id.*

[42] Ex. A.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 19 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

MacDonald claims that Parkey was biased against him but fails to rebut the legal presumption that public officials are presumed to be unbiased.[43] For MacDonald to successfully make a claim of unconstitutional bias, he would have to overcome that presumption by showing that the Parkey had prejudged, or reasonably appeared to have prejudged, his case.[44]

MacDonald bases his claims on three exchanges between Parkey and witnesses. The exchanges are somewhat meaningless out of context, but MacDonald attempts to depict them as evidence of bias. In fact, each depicts normal, investigatory conduct.

MacDonald first takes issue with Parkey referring to women's buttocks as "asses." It is important to note that it is neither uncommon nor inappropriate for a Title IX investigator to use the same sort of language in his or her questioning that the respondent may have used or that the listener may be accustomed to using. So while not appropriate for a church picnic, calling women's buttocks "asses" on a college campus is not indicative of bias, and MacDonald's claims of bias based on the use of that word are misplaced.

---

[43] *Stivers v. Pierce*; 71 F.3d 732, 741 (9th Cir. 1995); *Rollins v. Massanari*, 261 F.3d 853, 857-58 (9th Cir. 2001).

[44] *Id.* (citing *Kenneally v. Lungren,* 967 F.2d 329, 333 (9th Cir. 1992) (quoting *Partington v. Gedan,* 880 F.2d 116, 135 (9th Cir. 1989) (Reinhardt, J. concurring and dissenting)), *cert. denied,* 506 U.S. 1054 (1993).

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 20 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Similarly, MacDonald also claims that the following interchange demonstrated Parkey's bias and inability to fairly investigate this case matter:

> I mean, I can't be biased because then I can't investigate it. But you're not the only one. And again, I could only say that because you know it.
>
> You're not the only one. And I think if you were to talk to Able and not obviously pressure her, but ask her if she would consider doing the investigation as well. I can do both at the same time.

Once again, MacDonald pulls this sentence out of context. Parkey is speaking with D.P., who was the second woman to come forward and complain about MacDonald's harassment, after learning about C.M. Accordingly, it is not inappropriate to mention that another complainant has come forward, as there is no question that D.P already knows that fact. In short, Parkey did not taint or embolden D.P. by mentioning C.M., as D.P. was already was aware of her claims. While he asks D.P. to encourage C.M. to initiate a complaint, it is not clear whether it is because C.M. is autistic and may respond better to a classmate or for some other reason. Regardless, Parkey's comments indicate that he is clearly conscious of and trying to avoid any potential bias or taint. This interchange fails to demonstrate the sort of extreme prejudgment required by the Ninth Circuit to demonstrate an agency official's bias.

Similarly, MacDonald argues that Parkey acted inappropriately when he:

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 21 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

told Baker that it was okay to talk to other students about the investigation, which is particularly disturbing given the context of Baker wondering if that would be "retaliation":

> Baker: And with me, like telling my friends about what happened. Would that be considered retaliation against him?

> Parkey: It depends on how you tell them. If you go walking around campus with a sign, maybe. If you just talk to someone like you do with Ke** or Able, no.

Parkey's advice in the above exchange is completely appropriate. He is simply trying to explain to a student that there is a fine line between her First Amendment rights to discuss this matter publicly and the point where advertising the allegations against MacDonald can actually become harassing to him. This is a frequent problem in campus investigations, where students' desires to publicize alleged misconduct can snowball and become harassing. In fact, Parkey is anticipating that very problem occurring in this matter, as on January 20, 2020 MacDonald filed his own complaint alleging that the victims of his harassment were now harassing him.[45] The University has neither the ability nor the right to prevent students from discussing an ongoing investigation, and there is nothing improper about telling a complainant or witness that they are free to discuss the case with other students. Like MacDonald's fundamental

---

[45] Childress Decl. at ¶ 10.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 22 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

misunderstanding of FERPA, discussed below, he also seems to believe that it is improper for University students and employees to discuss pending cases—it is not.

It is important to note that, as a Title IX investigator, Parkey does not solely decide any responsibility or punishment for a respondent found responsible for a Title IX violation; his work is reviewed and approved by Sara Childress, the University's Title IX coordinator. [46] Moreover, these are recorded interviews that have been transcribed; now that Tillinghast is conducting the investigation, he can review these transcripts and determine whether Parkey exerted any undue influence on the witnesses. He can also re-interview witnesses if he finds it necessary.

Public agency officials are presumed to be unbiased. [47] The Ninth Circuit has frequently analyzed this in relation to magistrate judges and other quasi-judicial decisionmakers. Parkey, while not a judge, is in a similar quasi-judicial role where he is gathering and weighing evidence and making credibility determinations. In these cases, the Ninth Circuit has held that even if a public official's behavior is deserving of criticism, the court must be concerned with the overriding question of whether the public official demonstrated "fundamental fairness." [48] To overcome that presumption

---

[46] R.01.04.090.B.3. *See* Docket 11-3 at 19.
[47] *Bayliss v. Barnhart*, 427 F.3d 1211, 1215-16 (9th Cir. 2005).
[48] *Id.* (citing *Ginsburg v. Richardson,* 436 F.2d 1146, 1151 (3d Cir. 1971) ("We have reviewed the entire record in this case, and while the conduct of the hearing examiner is

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 23 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

regarding Parkey, MacDonald would have to show a conflict so extreme that it would demonstrate that Parkey was incapable of a fair judgement. Again, while not appropriate for a church picnic, the statements that MacDonald points to are surely not extreme examples of bias.

In looking at the conduct of agency officials for indications of undue bias, the Ninth Circuit's *Stivers* decision is particularly instructive in this matter. In *Stivers*, the plaintiff was applying for a private investigation license before a state licensing board. He had recently been shot while investigating a break-in. One of the hearing board members opposed the plaintiff's license application, and in an effort to block the license intentionally spread false rumors that Stivers had, in fact, shot himself.[49] The 9th Circuit held that that "hostile comment" regarding the plaintiff would "clearly be <u>insufficient</u> to demonstrate that Pierce prejudged Stivers' application" and denied him his constitutional right to due process.[50] In *Stivers*, the comments made were intentional and directly attempted to torpedo the plaintiff's application.

Similarly, in *Liteky v. U.S.* the U.S. Supreme Court described the sort of comment necessary to demonstrate bias by a judge, which much show "such a high

---

subject to some criticism, we cannot say that it was so unfair as to constitute a denial of due process.").

[49] *Stivers*, 71 F.3d at 741.

[50] *Id.* at 745 (emphasis added).

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 24 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

degree of favoritism or antagonism as to make fair judgement impossible"[51] and must be "so extreme as to display clear inability to render fair judgment."[52]

MacDonald's claim—that three interchanges between Parkey and complainants denied him his constitutional right to due process—is meritless. First, those statements do not approach the sort of overt bias necessary to overcome the presumption that public agency employees are unbiased. Second, even if there was bias, the University cured it by bringing in a seasoned, new investigator who can review interviews using his judgment or re-interview witnesses if necessary. Third, any alleged bias in the investigation will be reviewed by a Title IX coordinator prior to any punishment being imposed. Fourth, the investigation's conclusions can be appealed within the University internally prior to any discipline being imposed, and any allegations of bias can be challenged in that administrative process.

### a. The Plaintiff's Family Education Rights Privacy Act Claims Are Meritless

MacDonald provides no legal basis for the notion that an alleged violation of his Family Education Rights Privacy Act[53], or FERPA, rights somehow also violates his constitutional rights to due process. That said, MacDonald's pleadings do not actually

---

[51] *Liteky v. U.S.*, 510 U.S. 540, 555-56 (1994).
[52] *Id.* at 551.
[53] 20 U.S.C. § 1232g; 34 C.F.R. Part 99.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 25 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

allege a violation of FERPA. FERPA does not prohibit a person in the educational environment from simply talking or sharing information about students. To violate FERPA, a person must disclose information that is "contained in educational records."[54]

In his brief, MacDonald states that Parkey made several statements about whether there were other alleged victims, whether other students could discuss the case openly, and whether another alleged victim would come forward and make a complaint. Again, FERPA is a records-based statute, and simply talking about MacDonald does not violate his FERPA rights. The University disputes that any of the statements allegedly made by Parkey were contained in MacDonald's education records and argues that MacDonald's FERPA argument is really a red herring—even if a violation of FERPA occurred, that violation would not constitute a constitutional due process violation or make any statement inadmissible.

### b. The Plaintiff's Claims of Delay are Meritless

The University's regulations regarding investigation timelines specifically state that investigations may be "extended for good cause," including "the availability of individuals and evidence relevant to the investigation…school breaks, or to address

---

[54] 34 C.F.R. § 99.3 "Disclosure means to permit access to or the release, transfer, or other communication of personally identifiable information **contained in education records** by any means, including oral, written, or electronic means, to any party except the party identified as the party that provided or created the record." (emphasis added).

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 26 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

other legitimate reasons." Additionally, the regulations state that "the complainant or respondent may request an extension with a showing of good cause." Here, MacDonald and his counsel requested almost a month in delay, and the University granted the request. However, because of the delay due to MacDonald's request, the investigation overlapped with time that Parkey was unavailable due to training and then University holidays. In short, the normal timeline was extended for "good cause" provided for by regulation, and MacDonald and his counsel were made aware of the extension.[55] The regulation is provided in full below:

> C. Investigative Timeline
>
> 1. Within approximately 50 calendar days from the date the complaint was filed, the final investigative report will be completed and the Title IX coordinator will notify the parties of the outcome of the investigation and forward any findings of responsibility along with the investigative report and relevant documentation to the appropriate discipline authority.
>
> 2. Any timeline associated with the formal resolution process, including appeals, may be extended for good cause. Good cause may exist for a variety of factors, including the complexity of the circumstances of each allegation, the availability of individuals and evidence relevant to the investigation, to comply with a request by law enforcement, school breaks, or to address other legitimate reasons. The Title IX staff may extend a deadline for good cause; alternatively, the complainant or respondent may request an extension with a showing of good cause.

---

[55] Childress Decl. at ¶ 12.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 27 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

3. If the investigation is extended for good cause, the Title IX coordinator will notify both parties of the delay and its anticipated duration.

MacDonald complains that the investigation took too long. Specifically he states in his complaint:

> There were no difficulties with the availability of evidence or individuals. Several individuals were interviewed by Defendant Parkey.
>
> c. Law enforcement was not involved with the incident.
>
> d. School breaks were not a factor in the investigation.
>
> e. There were no legitimate bases for an extension.
>
> f. Neither the complainant nor the respondent requested an extension of time.

MacDonald's assertion is directly contradicted by the facts of this case. Parkey requested an interview with MacDonald on November 15, 2019. MacDonald did not respond to the that email until November 17, 2019. In the November 17, 2019 email, MacDonald stated he would be represented by counsel. In order to interact with counsel, Parkey requested a FERPA release from MacDonald so that he could share documents and information with his counsel. MacDonald returned a signed release on November 21, 2019. In that November 21, 2019 email, MacDonald requested an interview three weeks later, the week of December 9th.[56] Parkey accommodated that request for a delay

---

[56] Childress Decl. at ¶ 10.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 28 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

and scheduled an interview for December 12th. In the end, MacDonald's requested delay pushed the investigation out almost one full month. Parkey actively pursued the investigation during this requested delay, but interviews that necessarily arose from facts brought forward by MacDonald's interview continued for another week. The University was closed from December 21, 2019 until January 6, 2020, and Parkey was not available until January 11, 2020. During this closure, students are not present, and employees are neither paid nor allowed to work. As a result, "availability of individuals," "school breaks," and "respondent requests" were all definitely factors in the Title IX office's ability to investigate the case within the normal timeline.

MacDonald's delay claims are meritless, as the delays came at his request, there was good cause to grant his requests, and scheduling was discussed with him and his counsel. His counsel neither objected to these delays nor raised any complaint regarding investigative timelines.

### c. The Other Claims in MacDonald's Complaint are Meritless

#### (i) The Plaintiffs "Eavesdropping" Claims are Meritless

MacDonald's Complaint alleges claims of "eavesdropping," but fails to provide any specific description of what he is referring to or what behavior amounted to "eavesdropping." Contrary to MacDonald's allegations, the University is unaware of

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 29 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

any "eavesdropping" or surveillance equipment being used in the Title IX investigation. MacDonald relies on AS 42.20.310 as the basis for his due process claims, a telecommunications statute primarily tasked with policing illegal phone bugs and taps. The University is surely unaware of any conduct related to either phone bugs or taps. However, even reading that statute's definition of an "eavesdropping device"[57] as broadly as possible, the University is still unaware of any conversation being recorded in violation of AS 42.20.310. The plaintiff provides no support for this claim in his Declaration. This allegation is frivolous and there is no likelihood that MacDonald will succeed on this claim.

(ii) **The Plaintiff's Claims of Violation of the Administrative Procedures Act are Meritless**

The University is not subject to the Administrative Procedures Act.[58] Therefore, there is no likelihood that MacDonald will succeed on his claim that the University violated the APA, as it is baseless. There is no likelihood that MacDonald will succeed on this claim.

---

[57] AS 42.20.310(b). "In this section 'eavesdropping device' means any device capable of being used to hear or record oral conversation whether the conversation is conducted in person, by telephone, or by any other means; provided that this definition does not include devices used for the restoration of the deaf or hard-of-hearing to normal or partial hearing."

[58] AS 44.62.330.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 30 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

### (iii) The Plaintiff's Claims of a Contract Violation are Meritless

MacDonald makes claims of "breach of contract" in his complaint. The plaintiff had no contract with the University in relation to this investigation, nor does he explain the nature of the contractual relationship he alleges exists. In Alaska, the state courts have never held that a contract, specifically a contract stemming from a university catalog, exists between a student and a university.[59] This stance is in line with the federal courts' position, which is that a public university's catalog does not create a contract with an enrolled student.[60] This claim is meritless.

## 2. The Plaintiff's Alleged Harms are Not Irreparable

Under *Winter*, the Supreme Court required a plaintiff to "demonstrate that irreparable injury is *likely* in the absence of an injunction."[61] For the reasons explained

---

[59] *Hunt v. University of Alaska, Fairbanks*, 52 P.3d 739, 744-45 (Alaska 2002) citing *Bruner v. Petersen*, 944 P.2d 43 (Alaska 1997).

[60] *Gibson v. Walden University*, LLC, 66 F. Supp. 3d 1322, 1325 (D. Oregon 2014), stating "Other Circuits and Districts have confronted situations more closely analogous to the present case. In *Carr v. Board of Regents of University System of Georgia*, 249 F. App'x. 146, 150–51 (11th Cir. 2007), the Eleventh Circuit held that an undergraduate catalog did not constitute a contract, in part because it contained express disclaimers to that effect. *See also Abbas v. Woleben*, Civil No. 3:13–CV–147, 2013 WL 5295672, at *4 (E.D. Va. Sept. 19, 2013) (finding that university handbooks and catalogs do not form a contract when the terms are not binding on the university); *Brown v. Rector & Visitors of Univ. of Va.*, Civil Action No. 3:07–CV–00030, 2008 WL 1943956, at *6 (W.D. Va. May 2, 2008) (holding that a student handbook did not constitute a binding contract based on its disclaimers).

[61] *Winter*, 555 U.S. at 22 (emphasis added).

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 31 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

above, allowing the University's investigation to continue will not result in any due process deprivation for MacDonald. In fact, MacDonald will suffer no identifiable harm if the University's investigation continues; he is an enrolled student and is allowed to take classes just as he was before these allegations arose. The University has placed no constraints on him other than that he is prohibited from speaking to one of the complainants.[62] If he feels that the investigation into case came to the wrong conclusion or was biased, the University offers him a full appeal process.[63] Accordingly, even if there were hypothetically some merit to MacDonald's due process claims, those problems would not result in irreparable harm, as they could be addressed in an appeal prior to any discipline taking place.

MacDonald's Declaration alleges a list of other harms that will befall him if the investigation is not stopped.[64] All of these harms, however, are reparable through compensation if he prevails at trial. By definition, if a harm can be compensated monetarily, it is not irreparable.[65] For example, he claims that he is distressed about the

---

[62] Childress Decl. at ¶ 8.
[63] R01.04.100. Formal Resolution of the Complaint: Appealing Investigative Findings. *See* Docket 11-3 at 20.
[64] Docket 11-2 at 6-7.
[65] *Los Angeles Mem'l Coliseum v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 32 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

allegations against him and has lost hair and weight as a result.[66] If that is true and he prevails at trial, he may be compensated for emotional distress.

MacDonald has admitted some of the conduct alleged in this investigation,[67] and it is safe to say that every student who engages in misconduct experiences stress while awaiting discipline. Following MacDonald's argument to its logical to its end, the University would never be able to discipline a student for misconduct because the stress of an investigation would constitute an irreparable harm. In fact, the University's investigation may exonerate MacDonald regarding his remaining claims and ameliorate that stress.

MacDonald also claims in his motion for temporary restraining order and preliminary injunction that his "academic career is [] suffering,"[68] but he provides no evidence supporting this claim and fails to provide the sort of educational records (*e.g.*, grades, affidavits from faculty, test results) that would normally buttress this sort of allegation. Without more detail, it is impossible to know what he means by this allegation, but University regulations specifically anticipate this situation and mandate that the University to provide respondents "interim measures" during an investigation to

---

[66] Docket 11-2 at 6.
[67] Childress Decl. at ¶ 9.
[68] Docket 11 at 9.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 33 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

prevent academic declines.[69] Under "interim measures," the University will attempt to accommodate any academic problem resulting from the investigation, making this problem reparable.

MacDonald's claim that he will have a more difficult time getting into graduate school because of this investigation[70] is unsupported by facts and is purely speculative. As the Ninth Circuit has repeatedly held, "speculative injury cannot be the basis for a finding of irreparable harm."[71] He has not provided any evidence that he actually meets the requirements for graduate studies, applied to graduate school, is qualified for any graduate program, or was denied entry to any graduate program. Again, even if this allegation were true, he could be compensated monetarily for it if he ultimately prevails at trial, making it reparable.

In fact, if his requests to this court are denied, MacDonald will continue to attend UAS with virtually no change to educational experience—he simply wants to forestall consequences for the behavior to which he has admitted and the investigation into the

---

[69] R. 01.04.010.A.10 ("Interim measure" **is an action taken by the university to preserve the complainant's and respondent's educational experience**, to preserve the safety of all parties and the broader university community, to remedy discriminatory effects on the complainant and others, to maintain the integrity of the investigation and resolution process, or to deter retaliation.) (emphasis added). *See* Docket 11-3 at 9.
[70] Docket 11-2 at 6.
[71] *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) (citing *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984)).

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 34 of 37
148074111.6

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

additional conduct alleged. None of the harms alleged by MacDonald are irreparable, and his request for a temporary restraining order and preliminary injunction must be denied.

### 3. The Balance of Equities Tip Sharply in the University's Favor

*See* page 16-18 above.

### 4. A Preliminary Injunction is Not in the Public Interest

The public has an interest in the University investigating and addressing sexual harassment and sexual assault on its campuses, along with its other critical student conduct rules. Here, a student who has already admitted to violating the University's policies regarding sexual harassment asks the court to prohibit the University from resolving this matter and to allow him to continue attending school, without a full investigation, as though no complaints had ever been made.

While MacDonald has expressed concerns about the handling of this investigation, the University has made great efforts to accommodate his worries, going so far as to hire a new investigator to appease his fears of mistreatment. If MacDonald remains displeased with the University's handling of this matter once the investigation concludes, he can appeal its results through a formal appeal process.

While neither MacDonald nor the public will suffer any harm if this case is allowed to move forward, an injunction will work directly against the public's interest.

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 35 of 37
148074111.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

A temporary restraining order or preliminary injunction will effectively prevent the University from ever conducting a full investigation in this matter, as witnesses will disperse and memories will fade. That failure will prevent the University from assuring its community that their complaints will be addressed in a timely fashion, and that it has the ability to enforce its own rules.

## III.    CONCLUSION

MacDonald's claims fail the Ninth Circuit's *Winter* test. His due process claims are meritless, and his alleged harms are either reparable or speculative. The balance of interests weighs sharply against him, and his claims oppose the public's interest. This is not an exceptional case supporting issuance of an injunction ordering the University to halt its investigation and ignore the complainants as if their complaints were never received. The University's ability to enforce critical student conduct rules and to follow its internal procedures will be substantially impeded if the requested injunctive relief is granted. MacDonald, on the other hand, has not articulated how he will suffer irreparable harm if the status quo is maintained. If the investigation finds he did not violate any of the University's Title IX regulations, the process will exonerate him, and his concerns regarding stress, grades, and continued studies, will be over. He should wait until that process is completed to obtain his requested relief or should use the administrative appeal process afforded by the University. At this early junction, there is

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 36 of 37
148074111.6

no basis to grant his unsupported request for an extreme form of relief. MacDonald's motion for a temporary restraining order or preliminary injunction should be denied.

DATED: May 5, 2020.

PERKINS COIE LLP

s/Michael E. O'Brien
Michael E. O'Brien
Alaska Bar No. 0311084

Attorney for Defendants
THE UNIVERSITY OF ALASKA, SARA
CHILDRESS IN HER INDIVIDUAL AND
SUPERVISORY CAPACITY, CHASE
PARKEY IN HIS INDIVIDUAL AND
SUPERVISORY CAPACITY, SEAN
MCCARTHY, JON TILLINGHAST

CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2020 I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No. 1:20-cv-00001-SLG who are registered CM/ECF users will be served by the CM/ECF system.

s/ Michael E. O'Brien

RESPONSE TO PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
*MacDonald v. UA, et al.*
Case No. 1:20-cv-00001-SLG
Page 37 of 37
148074111.6