# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

DANIEL MACDONALD,

               Plaintiff,

      v.

THE UNIVERSITY OF ALASKA, *et al.*,

             Defendants.

Case No. 1:20-cv-00001-SLG

## ORDER RE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff initiated this action against Defendants University of Alaska ("UA"), *et al.,* on April 14, 2020, pleading ten claims arising out of UA's investigation into complaints that Plaintiff had engaged in sexual harassment and non-consensual sexual contact.[1] On April 17, 2020, the Court denied Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction without prejudice.[2] On April 19, 2020, Plaintiff filed a Renewed Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.[3] The Court denied Plaintiff's renewed request for a temporary restraining order on April 21, 2020, and established a briefing schedule for Plaintiff's request for a preliminary injunction.[4]

---

[1] *See generally* Docket 1.

[2] Docket 10; *see also* Docket 4 (Motion).

[3] Docket 11.

[4] Docket 13.

The briefing is complete and the portion of Plaintiff's motion requesting a preliminary injunction is now before the Court.[5] Plaintiff has requested oral argument, but it was not necessary for the Court's decision.

The relevant facts are well known to the parties and have been laid out by the Court in its previous orders regarding Plaintiff's requests for a temporary restraining order.[6] They will not be repeated here except where necessary for the Court's analysis.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."[7] In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest."[8]

---

[5] UA's Response in Opposition is at Docket 15, and Plaintiff's Reply is at Docket 19.

[6] *See* Docket 10 at 1–4; Docket 13 at 2–5.

[7] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)).

[8] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 2 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 2 of 23

*Winter* was focused on the second element, and clarified that irreparable harm must be likely, not just possible, for an injunction to issue.[9]

Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that its "serious questions" approach to preliminary injunctions was still valid "when applied as part of the four-element *Winter* test."[10]  Accordingly, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor.'"[11]

Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[12]

## DISCUSSION

As a threshold matter, the Court finds it necessary to clarify the relief available to Plaintiff on his motion, as that potential relief establishes the context for the Court's analysis.  In his motion, Plaintiff requests that the Court "enjoin UA

---

[9] *See Winter*, 555 U.S. at 25; *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

[10] *See All. for the Wild Rockies*, 632 F.3d at 1131–35.

[11] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[12] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 3 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 3 of 23

and its agents from continuing with their investigation" and also that it "order that UA allow Plaintiff to complete his studies at UA with no references to the allegations of sexual harassment and non-consensual sexual contact."[13]  In his reply, Plaintiff clarifies that his "position is not that the investigation should be delayed," but that "[t]he investigation *should not be allowed to proceed*."[14]  To the extent that Plaintiff is requesting a permanent remedy—that the Court close the investigation into his conduct—his request is premature.  "The purpose of [a preliminary injunction] is not to conclusively determine the rights of the parties but to balance the equities as the litigation moves forward."[15]  A preliminary injunction, should the Court issue one, would prevent UA from continuing with its investigation during the pendency of this case;  it would not permanently end UA's investigation. Rather, if UA were to eventually prevail on the merits, it would then be able to resume its investigation into Plaintiff's conduct where it had left off.

The Court now turns to the merits of Plaintiff's motion.  Plaintiff bases his request for preliminary injunctive relief on two alleged violations of his 14th Amendment right to procedural due process: first, that the conduct of Mr. Parkey, the initial investigator assigned to this case, "virtually assured that Plaintiff would

---

[13] Docket 11 at 24–25.

[14] Docket 19 at 3 (emphasis in original).

[15] *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018) (quoting *Trump v. Int'l Refugee Assistance Project*, __ U.S. __, 137 S. Ct. 2080, 2087 (2017)).

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 4 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 4 of 23

not be given a fair and equitable treatment of the allegations lodged against him";

and second, that UA failed to complete the investigation and formally resolve the

complaints against Plaintiff within 50 days, as prescribed in the regulations

implementing the University's policy on sex-based and gender-based

discrimination.[16]

Plaintiff contends that the balance of hardships tips sharply in his favor, and

that he therefore need only show "serious questions going to the merits" to prevail

on his motion.[17]   Accordingly, the Court will begin by discussing the balance of

hardships.

### 1.  The Balance of Hardships

"To determine which way the balance of the hardships tips, a court must

identify the possible harm caused by the preliminary injunction against the

possibility of the harm caused by not issuing it" and then weigh "the hardships of

each party against one another."[18]   Plaintiff contends that he will suffer several

irreparable harms in the absence of preliminary injunctive relief.   And Plaintiff

---

[16] Docket 11 at 13–21; *see also* Docket 11-3 at 19, R01.04.009(C)(1) (UA regulation stating "[w]ithin approximately 50 calendar days from the date the complaint was filed, the final investigative report will be completed and the Title IX coordinator will notify the parties of the outcome of the investigation").

[17] Docket 11 at 13, 21 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[18] *Univ. of Haw. Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999).

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 5 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 5 of 23

maintains that the "violation of a constitutional right, no matter how minimal, presumptively constitutes irreparable harm."[19]

Plaintiff contends that Mr. Parkey's conduct tainted the witnesses against him and ensured that he would not receive a fair or impartial adjudication.[20] The Court finds this alleged harm speculative. Plaintiff cites several short portions of interview transcripts to support his claim but has not provided the Court with the transcripts themselves.[21] Further, it is unknown when the investigation will be concluded, and whether the decision will be unfavorable to Plaintiff. And if an unfavorable decision is reached, UA's regulations provide Plaintiff with the right to an internal appeal, wherein he can claim that "a procedural error was made during the process that significantly impacted the finding being appealed," and during the pendency of which any sanction would be stayed.[22]

---

[19] Docket 11 at 22 (citing *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019); *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). The law of this Circuit "do[es] not require a strong showing of irreparable harm for constitutional injuries," *Cuviello*, 944 F.3d at 833 (discussing First Amendment violations), but, as discussed below, Plaintiff has not shown that he is likely to succeed on his constitutional claims. Nonetheless, the Court considers here the practical effect that the alleged procedural due process violations may have on Plaintiff during the pendency of this litigation.

[20] Docket 11 at 17.

[21] Docket 11 at 16. Plaintiff explains that the "transcripts are solely in the possession of Defendants and were only made available to Plaintiff for a brief time for him to review." Docket 11 at 14 n.2.

[22] Docket 11-3 at 20, R1.04.100(B), (C)(1).

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 6 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 6 of 23

Plaintiff's second procedural due process claim alleges that UA did not complete its investigation in a timely manner.[23]  But if Plaintiff does not ultimately prevail on the merits in this case, a preliminary injunction would have the effect of exacerbating the very harm Plaintiff alleges by further delaying the resolution of the University's investigation.

Plaintiff also contends that his "academic career is . . . suffering" and that "[h]e is intending to pursue a career in archaeology and has been delayed because of the ongoing investigation."[24]  In a declaration attached to the instant motion, Plaintiff explains that the investigation has "disrupted [his] ability to gain admittance to a graduate program" because "[d]uring the pendency of the investigation, [he is] unable to obtain the necessary letters of recommendation."[25]  He maintains that "[e]very day that Plaintiff continues to be denied the ability to continue his education is lost time which cannot ever be recovered."[26]

The Court is not persuaded that suspending UA's investigation during the pendency of this litigation will resolve Plaintiff's present inability to secure a letter

---

[23] Docket 11 at 19.

[24] Docket 11 at 22.

[25] Docket 11-2 at 6, ¶ 28.  In the Complaint, Plaintiff alleges that "[a]t [Mr.] Parkey's prompting, [a complainant] told Professor Erica Hill that Plaintiff was a sexual predator and convinced her not to write a letter of recommendation for him."  Docket 1 at 9, ¶ 41.  In a declaration, Ms. Childress states that Mr. Parkey received an email from Professor Hill regarding Plaintiff's "request for a letter for graduate school" on December 4, 2019.  Docket 16 at 6, ¶ 10.

[26] Docket 11 at 21.

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 7 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 7 of 23

of recommendation. Plaintiff, in effect, argues that the reputational harm caused by the investigation has impacted his academic career, but he does not explain how anything short of an order terminating the investigation entirely—a remedy unavailable at this preliminary stage—will cure this injury and prevent such harm from continuing while he litigates his case in federal court.[27] And apart from the lack of a reference letter, Plaintiff does not contend that the investigation directly impacts his education in any other way. UA maintains that "if the investigation goes forward, [Plaintiff] will continue his studies with no impediments to his studies or access to campus life" and that "[t]he sole restriction on his conduct is that he cannot speak to [a complainant]."[28]

Plaintiff also contends that he suffers "severe emotional distress" during the pendency of the investigation due to his conviction that "[i]t is highly unlikely that Plaintiff can receive a fair and impartial adjudication of the charges."[29] He maintains that his mental and physical health have been seriously impacted by this distress.[30] Preliminary injunctive relief, if ordered, might alleviate Plaintiff's distress to some degree; but it does not ensure that Plaintiff will prevail on the merits and

---

[27] Indeed, the Court questions whether a final judgment for Plaintiff in this case would cure the reputational harm Plaintiff alleges, as Plaintiff himself asserts that he "will suffer harm even if he is vindicated." Docket 19 at 10.

[28] Docket 15 at 17.

[29] Docket 11 at 22.

[30] Docket 11 at 22; *see also* Docket 11-2 at 6, ¶¶ 25–27.

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 8 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 8 of 23

secure the termination of the investigation.  Nor, as discussed above, would it repair any reputational harm that Plaintiff has already suffered.  Plaintiff himself asserts that his injury will persist until the investigation is closed, regardless of its outcome, stating in his declaration that "[s]o long as the investigation continues, my health will likely continue to deteriorate" and "i[f] the investigation clears my name, I will still have lost time in pursing my career in addition to continued emotional distress."[31]

The Court therefore finds that any harm to Plaintiff caused by the absence of a preliminary injunction will not be irreparable.  He does not currently face sanctions and is able to continue his education at UA.  Should the investigation conclude and any sanctions be imposed before this litigation is over, Plaintiff has the ability to seek an internal appeal and stay those sanctions.  Moreover, juries commonly award monetary damages for emotional distress, and harm that can "be adequately remedied by money damages and is [not] permanent or at least of long duration" is generally not irreparable.[32]

The Court must weigh Plaintiff's asserted harm against the harm that a preliminary injunction could cause to UA.  The University contends that "[h]alting the investigation [would] nurture[] a misperception that the University is unable to

---

[31] Docket 11-2 at 6–7, ¶¶ 30, 32.

[32] *W. Watersheds Project v. Bernhardt*, 392 F. Supp. 3d 1225, 1254 (D. Or. 2019) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987)).

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 9 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 9 of 23

police its campus, enforce its rules, and keep its students safe."[33]  It maintains that it has "the legal authority to regulate and police its campuses,"[34] and that a preliminary injunction would restrict its ability to do so and prevent it from providing a forum to and protecting the interests of the complainants against Plaintiff.  UA also contends that a preliminary injunction would make it more difficult for it to restart the investigation if it prevails in this forum, since it would make the events in question that much more remote.  Plaintiff responds that "there has been no evidence presented that [the complainants against him] will be harmed while the matter is decided," and maintains that UA brought the delay caused by a preliminary injunction on itself by the actions of its agents and that it must therefore bear the consequences.[35]  Plaintiff further asserts that the University's ability to finish the investigation in the future would not be affected by a preliminary injunction, as "[a]ll of the evidence has already been collected."[36]

---

[33] Docket 15 at 17.

[34] Docket 15 at 17 (citing *Alaska v. Chevron Chem. Co.*, 669 F.2d 1299, 1301 (9th Cir. 1982)).

[35] Docket 19 at 8–9.

[36] Docket 19 at 9.  The Court notes that it is unclear whether Mr. Tillinghast is continuing to collect evidence at this point in the investigation.  Ms. Childress states in her May 5, 2020 declaration that "[t]he University continues to investigate the subject Title IX proceeding against [Plaintiff]," Docket 16 at 9, ¶ 14, and the record shows that Mr. Tillinghast was attempting to schedule an interview with Plaintiff in mid-April 2020.  *See* Docket 11-8 (April 14, 2020 email from Ms. Childress).  UA's response states that Mr. Tillinghast "can . . . re-interview witnesses if he finds it necessary," Docket 15 at 23, and Ms. Childress indicated to Plaintiff in an April 14, 2020 email that Mr. Tillinghast would be re-interviewing the relevant parties, stating:  "You were provided the evidence to review following the initial interviews.  You will be provided that opportunity again following the interviews with Mr. Tillinghast."  Docket 11-8 at 2.

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 10 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 10 of 23

The Court finds the University's argument compelling, especially its contention that a preliminary injunction would negatively impact its ability to protect the interests of the complainants against Plaintiff. Weighing this harm to UA against the speculative and reparable harm that Plaintiff alleges he would suffer in the absence of preliminary injunctive relief, the Court concludes that the balance of hardships does not tip sharply in Plaintiff's favor. To the contrary, the Court finds that balance of hardships tips squarely in UA's favor. Accordingly, a "serious questions going to the merits" inquiry would be improper.[37]

### 2. Likelihood of Success on the Merits

Even if the balance of hardships did tip in Plaintiff's favor, he has failed to prove the remaining *Winter* factors. Plaintiff bases his request for a preliminary injunction on two procedural due process claims; he has not shown a likelihood of success on either.

"A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection."[38] Supreme Court precedent makes clear that university students facing dismissal or other sanctions on disciplinary grounds are entitled to

---

[37] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014).

[38] *Krainski v. Nevada ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010) (citing *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)).

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 11 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 11 of 23

some degree of process.[39]  However, the extent of the process due is unclear under Ninth Circuit law,[40] and other Circuits are divided on the question.[41]  But it is unnecessary for the Court to resolve this question here, since Plaintiff does not contend that UA's procedures are facially invalid.[42]  The Court instead turns to Plaintiff's claims that UA's procedures as applied to him violated his constitutional rights.

### A.  Mr. Parkey's Conduct

Plaintiff's first procedural due process claim arises out of Mr. Parkey's conduct while he was the investigator assigned to the case.  Plaintiff contends that "[Mr.] Parkey did not act impartially and he conducted his investigation in a biased

---

[39] *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 89–90 (1978) ("[D]ue process requires, in connection with the suspension of a student from public school for disciplinary reasons, 'that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.'" (quoting *Goss v. Lopez*, 419 U.S. 565, 581 (1975))).

[40] *See Oyama v. Univ. of Haw.*, 813 F.3d 850, 875 (9th Cir. 2015) (noting that "[a]cademic dismissals do not require a hearing and 'meet[] the requirements of procedural due process so long as the dismissal decision is "careful and deliberate,"'" but "[d]isciplinary dismissals, by contrast, may require more formal procedures" (second alteration in original) (first quoting *Brown v. Li*, 308 F.3d 939, 954–55 (9th Cir. 2002); then citing *Horowitz*, 435 U.S. at 85–86)).

[41] *Compare Gorman v. Univ. of R.I.*, 837 F.2d 7, 16 (1st Cir. 1988) (holding that university student facing disciplinary charges and suspension does not have right to unlimited cross-examination of witnesses) *with Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400–04 (6th Cir. 2017) (requiring cross-examination in university sexual harassment proceeding where credibility of witness was at issue).

[42] Plaintiff does, however, argue that his inability to directly cross-examine witnesses under UA's regulations will exacerbate the effect of Mr. Parkey's alleged misconduct.  *See* Docket 11 at 17–19; Docket 19 at 6–7; *see also* 11-3 at 18, R01.04.090(A)(5) ("The parties are not permitted to cross-examine each other, but each party may submit questions in writing to the investigator to be asked of the other party.").

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 12 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 12 of 23

manner which irreparably tainted the witnesses against Plaintiff," depriving him of "the impartial forum . . . required under *Charfauros v. Bd. of Elections* and *Stivers v. Pierce.*"[43]  In *Stivers*, the Ninth Circuit explained that "[i]t is well-settled that the Due Process Clause prevents the state from depriving a plaintiff of a protected property interest without a 'fair trial in a fair tribunal.'"[44]  "In attempting to make out a claim of unconstitutional bias, a plaintiff must 'overcome a presumption of honesty and integrity' on the part of decision-makers" and "show that the adjudicator has 'prejudged, or reasonably appears to have prejudged, an issue.'"[45]

Plaintiff cites to several interactions between Mr. Parkey and witnesses.  In one, Plaintiff points to Mr. Parkey's use of the word "ass," claiming that is was "unprofessional and crude and bordered on [a] Title IX violation[] itself."[46]  In another, Plaintiff quotes an interview in which a complainant asked Mr. Parkey whether "telling my friends about what happened . . . [w]ould . . . be considered retaliation against [Plaintiff]," and Mr. Parkey replied:  "It depends on how you tell them.  If you go walking around campus with a sign, maybe.  If you just talk to

---

[43] Docket 11 at 14 (first citing 249 F.3d 941 (9th Cir. 2001); then citing 71 F.3d 732 (9th Cir. 1995)).

[44] 71 F.3d at 741 (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).  The Ninth Circuit explained that  "[t]his requirement applies not only to courts, but also to [s]tate administrative agencies charged with applying eligibility criteria for licenses." *Id.* (citing *Withrow v. Larkin*, 421 U.S. 35, 46 (1975).  For purposes of resolving this motion, the Court will assume that it also applies to university disciplinary proceedings .

[45] *Id.* (first quoting *Withrow*, 421 U.S. at 47; then quoting *Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992)).

[46] Docket 11 at 14.

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 13 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 13 of 23

someone like you do with [name omitted] or [name omitted], no."[47]  Plaintiff further

contends that Mr. Parkey "used improper interview and interrogation techniques"

and "disclosed confidential information about the pending investigation."[48]

In response, UA maintains that the transcript portions that Plaintiff cites do

not show bias on the part of Mr. Parkey, nor even that he acted inappropriately.[49]

Moreover, the University contends that any bias or impropriety on Mr. Parkey's

part is irrelevant since he was removed from the case and replaced by Mr.

Tillinghast.[50]  The Court finds both of these arguments compelling.  UA provides a

reasonable explanation for the transcript portions quoted in Plaintiff's motion.  For

example, addressing the exchange quoted above, the University maintains that

Mr. Parkey "[wa]s simply trying to explain to a student that there is a fine line

between her First Amendment rights to discuss this matter publicly and the point

where advertising the allegations against [Plaintiff] can actually become harassing

to him."[51]  And the Court does not find it likely that Mr. Parkey's use of the word

"ass" is indicative of an unconstitutional bias against Plaintiff. Nor has Plaintiff

---

[47] Docket 11 at 15.

[48] Docket 11 at 16.

[49] Docket 15 at 20–22.

[50] Docket 15 at 23.

[51] Docket 15 at 22.

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 14 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 14 of 23

provided portions of the transcript that demonstrate Mr. Parkey's allegedly improper interrogation techniques.[52]

Plaintiff replies that while he "identified certain instances of [Mr.] Parkey's misdeeds in the complaint and motion, that was not intended to be a complete listing," and that "[b]ecause Plaintiff had limited access to the investigation materials on one occasion and no access after January 27, 2020, Plaintiff was limited in identifying more examples."[53]  However, Plaintiff bears the burden of showing that he is likely to prevail on the merits of this claim; the record before the Court on this motion is simply insufficient to show that Mr. Parkey prejudged or appeared to prejudge an issue in Plaintiff's case.

Moreover, Mr. Parkey has been removed from the investigation.  Plaintiff has not shown that the effects of any misconduct by Mr. Parkey have carried over into Mr. Tillinghast's investigation.  Plaintiff claims that Mr. Parkey's "unprofessional and partial [conduct] le[d] to the likely bias of the witnesses" and that "[t]hese witnesses are tainted to the point that given the very low 'preponderance of the evidence' the violations of Plaintiff's due process rights

---

[52] *See* Docket 11 at 16.  Plaintiff maintains that "[Mr.] Parkey presented leading questions to coax [a witness] into agreeing with his preconceived notions of the facts," but does not provide the transcript itself for the Court's review.  Docket 11 at 16.

[53] Docket 19 at 5–6.

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 15 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 15 of 23

cannot be remedied if the investigation is allowed to proceed."[54]  He contends that "[i]n this context, it is irrelevant whether [Mr.] Parkey was biased."[55]  Plaintiff cites no law for this proposition.[56]  Plaintiff has not demonstrated that he is likely to prevail on a claim that one or more witnesses has been irreparably tainted against him.  Plaintiff also contends that any effect Mr. Parkey had upon the witnesses will be magnified by the unavailability of cross-examination,[57] but Plaintiff does not indicate whether he has availed himself of his ability to "submit questions in writing to the investigator to be asked of the other party," or why that approach is inadequate.[58]

For the foregoing reasons, Plaintiff has failed to show a likelihood of success on the merits of his procedural due process claim arising out of Mr. Parkey's conduct.

---

[54] Docket 11 at 19, 17–18; *see also* Docket 19 at 6 ("Plaintiff alleges that Parkey's conduct tainted the witnesses in this matter and that because the witnesses have been tainted, Plaintiff will not receive a fair adjudication.").

[55] Docket 19 at 6.

[56] Indeed, the only two cases that Plaintiff does cite to directly support his claim regarding Mr. Parkey's conduct, *Charfauros v. Bd. of Elections*, 249 F.3d 941 (9th Cir. 2001), and *Stivens v. Pierce*, 71 F.3d 732 (9th Cir. 1995), concerned bias on the part of an adjudicator, not the tainting of witnesses.  Docket 11 at 14.

[57] *See* Docket 11 at 18–19; Docket 19 at 6 ("Plaintiff will not have a reasonable opportunity to elucidate testimony of the witnesses in a manner that mitigates [Mr.] Parkey's misconduct.").

[58] *See* Docket 11-3 at 18, R.01.04.090.

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 16 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 16 of 23

## B. The Investigative Timeline

Plaintiff's second claim asserts that UA failed to comply with its regulations, which direct that "the final investigative report will be completed" within "approximately 50 calendar days from the date the complaint was filed,"[59] and that the length of the investigation into the complaints against him violates his right to procedural due process.[60] The parties do not dispute that Plaintiff was informed of the complaint against him on November 8, 2019,[61] and that the investigation had not concluded as of April 14, 2020, when Plaintiff initiated this action.[62] Plaintiff contends that there was no good cause for this delay and that even if there was good cause, he had not been informed that the timeline would be extended.[63] The University responds that the timeline was extended for good cause, that Plaintiff himself requested "almost a month in delay," that school breaks had interrupted the investigation, and that the replacement of Mr. Parkey with Mr. Tillinghast also caused delay.[64]

---

[59] Docket 11-3 at 19, R01.04.090(C)(1).

[60] Docket 11 at 19–21.

[61] Docket 11-2 at 4, ¶ 11; Docket 16 at 4, ¶ 7.

[62] Docket 16 at 9, ¶ 14 (Ms. Childress declaration stating that as of May 5, 2020, "[t]he University continues to investigate the subject Title IX proceeding against [Plaintiff]").

[63] Docket 11 at 19–20; *see also* Docket 11-3 at 20, R01.040.90(C)(3) (providing that "[i]f the investigation is extended for good cause, the Title IX coordinator will notify both parties of the delay and its anticipated duration").

[64] Docket 15 at 27–29; *see also* Docket 11-3 at 20, R01.04.090(C)(2) (listing potential bases for extending investigative timeline).

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 17 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 17 of 23

Plaintiff contends that the delay in completing the investigation violated his right to procedural due process but cites no law to support this claim. Even assuming that UA violated its internal policy, the Court is not aware of any precedent that would support Plaintiff's contention that such a violation would be unconstitutional. The Supreme Court has held that

> due process requires, in connection with the suspension of a student from public school for disciplinary reasons, "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."[65]

Plaintiff provides no legal support for the proposition that resolution of a complaint within 50 calendar days is an additional constitutional protection afforded to university students facing disciplinary action. Accordingly, the Court finds that Plaintiff has not shown a likelihood of success on his procedural due process claim arising out of the investigative timeline.[66]

---

[65] *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85 (1978) (quoting *Goss v. Lopez*, 419 U.S. 565, 581 (1975)).

[66] In his reply, Plaintiff contends that the untimely resolution of the investigation also "violate[s] the AK Administrative Procedures Act, and breach[es] the contract between UA and Plaintiff." Docket 19 at 4. Plaintiff included these claims in his complaint, *see* Docket 1 at 26–31, ¶¶ 115–142, but did not identify them in the instant motion as entitling him to preliminary injunctive relief. The Court therefore declines to address these claims for the purpose of resolving Plaintiff's request for a preliminary injunction. Moreover, since Plaintiff makes only passing reference to them in his reply, he has not shown a likelihood on the success of the merits of these claims. The Court reaches the same conclusion for the remainder of the claims in Plaintiff's complaint, which are not given serious treatment, if raised at all, in the instant motion. *See* Docket 1 at 15–34, ¶¶ 70–165 (stating Plaintiff's ten causes of action); Docket 15 at 25–26, 29–31 (addressing several of Plaintiff's remaining claims); Docket 19 at 11–12 (contending that violations of the Alaska Administrative Procedure Act and that UA's alleged use of illegal surveillance also justify preliminary injunctive relief).

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 18 of 23

### 3. Likelihood of Irreparable Harm

The Court has already found, in its discussion of the balance of hardships, that the harms Plaintiff seeks to avert through preliminary injunctive relief are speculative and not irreparable.[67] Plaintiff has not shown that he will likely suffer irreparable harm in the absence of a preliminary injunction.[68]

### 4. The Public Interest

Finally, Plaintiff has not shown that a preliminary injunction would serve the public interest. "Whereas the balance of equities focuses on the parties, '[t]he public interest inquiry primarily addresses impact on non-parties rather than parties,' and takes into consideration 'the public consequences in employing the extraordinary remedy of injunction.'"[69]

Plaintiff contends that "[t]he issuance of injunctive relief would vindicate the public's interest in preserving fundamental individual constitutional rights."[70] However, as discussed above,[71] Plaintiff has not shown a likelihood of success on his constitutional claims. UA asserts that "[t]he public has an interest in the

---

[67] *See supra* 5–9.

[68] *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also All. for the Wild Rockies v. Cottrel*l, 632 F.3d 1127, 1131 (9th Cir. 2011).

[69] *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 1004 (9th Cir. 2019) (alteration in original) (quoting *Bernhardt v. L.A. Cty.*, 339 F.3d 920, 931–32 (9th Cir. 2003)).

[70] Docket 11 at 23–24 (citing *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

[71] *See supra* 12–18.

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 19 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 19 of 23

University investigating and addressing sexual harassment and sexual assault on its campuses."[72] It maintains specifically that "for the female students that [Plaintiff] harassed, justice delayed is justice denied. They are planning for the upcoming semester and will want to register for classes and housing knowing that they will be safe on campus."[73] The Court expresses no opinion at this time regarding the merits of the complaints made against Plaintiff. But the Court recognizes that the complainants have a strong interest in seeing their complaints adjudicated fully, despite Plaintiff's contention that "there has been no evidence presented that [the complainants] will be harmed while the matter is decided."[74] For the foregoing reasons, the Court finds that a preliminary injunction that suspends UA's investigation during the pendency of this action would not serve the public interest.

Plaintiff has therefore failed to establish the four factors necessary for a preliminary injunction to issue, and the Court will deny his request for that extraordinary remedy.

### 5. *Younger* Abstention

UA contends that the *Younger* abstention doctrine constitutes a separate basis for denying Plaintiff's motion.[75] In "exceptional circumstances," a federal

---

[72] Docket 15 at 35.

[73] Docket 15 at 17.

[74] Docket 19 at 9.

[75] Docket 15 at 11 (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 20 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 20 of 23

court may abstain from exercising its jurisdiction "where denying a federal forum would clearly serve an important countervailing interest."[76]  *Younger* abstention may apply with  "three categories of cases: '(1) parallel, pending state criminal proceedings, (2) state civil proceedings that are akin to criminal prosecutions, and (3) state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts.'"[77]  If a state proceeding fits into one of these categories, *Younger* abstention is warranted if "the state proceeding [is] (1) 'ongoing,' (2) 'implicate[s] important state interests,' and (3) provide[s] 'an adequate opportunity . . . to raise constitutional challenges.'"[78]  Abstention under *Younger* is proper "so long as 'the federal action would have the practical effect of enjoining the state proceedings.'"[79]

UA maintains that *Younger* abstention is warranted in this case because the Title IX enforcement action against Plaintiff is akin to a criminal prosecution, or "quasi-criminal."[80]  The University further maintains that the ongoing investigation implicates an important state interest—"[p]reventing sexual harassment and

---

[76] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).

[77] *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. 2019) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund.*, 754 F.3d 754, 759 (9th Cir. 2014)).

[78] *Id.* at 1044 (omissions in original) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

[79] *Id.* (quoting *ReadyLink*, 754 F.3d at 759).

[80] Docket 15 at 13 (citing *Doe v. University of Kentucky*, 860 F.3d 365, 371 (2017)).

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 21 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 21 of 23

sexual assault on the University's campuses"—and provides Plaintiff with adequate opportunities to raise constitutional challenges.[81]

Plaintiff addresses this argument only briefly in his reply and cites no law in doing so. He contends that abstention under *Younger* would be inappropriate because "[t]here is no procedure identified in the UA policies to allow something akin to a motion to dismiss," which "leaves judicial involvement as Plaintiff's only recourse to stop an investigation that violates UA's policies and procedures."[82] In addition, Plaintiff appears to argue that the investigation ended automatically after the 50-day limit in UA's policy, maintaining that "[i]n effect, the investigation is concluded without a finding of responsibility" and that "[s]ince the investigation should be considered concluded, it is appropriate for this Court to intervene at this time to prevent Defendants from continuing to violate Plaintiff's due process rights."[83] The Court does not entirely follow Plaintiff's argument, and notes that Ms. Childress states in her declaration that "[t]he University continues to investigate the subject Title IX proceeding against [Plaintiff]."[84] Further, the Court is not convinced that Plaintiff's asserted inability to move for dismissal of the complaints against him based on alleged violations of UA's internal procedures

---

[81] Docket 15 at 14–15.

[82] Docket 19 at 10–11.

[83] Docket 19 at 11.

[84] Docket 16 at 9, ¶ 14.

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 22 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 22 of 23

forecloses *Younger* abstention, as that doctrine focuses on a federal plaintiff's ability to raise *constitutional* challenges in ongoing state proceedings.[85]

Nevertheless, the Court will not at this time decide whether *Younger* abstention is appropriate in this case. Rather, the Court denies Plaintiff's request for preliminary injunctive relief on the grounds discussed herein. To the extent that UA seeks to dismiss or stay this entire case on the basis of *Younger* abstention,[86] it may file a separate motion to that effect.

## CONCLUSION

In light of the foregoing, Plaintiff's motion for preliminary injunctive relief at Docket 11 is DENIED.

DATED this 22nd day of May, 2020 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[85] Plaintiff does not address UA's contention that Plaintiff's ability to retain counsel, submit questions for witnesses, present evidence, and file an internal appeal enable him to raise his constitutional claims in UA's investigation proceeding. Docket 15 at 14.

[86] *Compare* Docket 15 at 15 ("[Plaintiff's] attempt to have the federal courts enjoin a state agency's enforcement of an important state interest violates the *Younger* abstention doctrine and must be dismissed.") *with* Docket 15 at 11 ("[Plaintiff's] request for a temporary restraining order or preliminary injunction violates the *Younger* abstention doctrine.").

Case No. 1:20-cv-00001-SLG, *MacDonald v. University of Alaska, et al.*
Order re Motion for a Preliminary Injunction
Page 23 of 23

Case 1:20-cv-00001-SLG   Document 20   Filed 05/22/20   Page 23 of 23